UNITED STATES of America

v.

Patricia Ann ESSEX, also known as
Patricia Ann Clark.

No. 12458.

United States District Court
E. D. Tennessee, S. D.

Nov. 3, 1967.

Austin Mittler, Michael Epstein, Daniel Schultz, Dept. of Justice, Washington, D. C., J. H. Reddy, Chattanooga, Tenn., for plaintiff.

John S. McLellan, Jr., Kingsport, Tenn., Harold S. Duncan, Chattanooga, Tenn., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FRANK W. WILSON, District Judge.

This is a proceeding under the provisions of the Federal Juvenile Delinquency Act (18 U.S.C. § 5031 et seq.) wherein the defendant is charged with having committed an act of juvenile de-

linquency and being a juvenile delinquent, in having allegedly committed a violation of 18 U.S.C. § 1503. Originally, the grand jury had returned an indictment against defendant for the alleged violation, but when it appeared that defendant was a juvenile and consented to trial as such, the indictment was withdrawn and the information herein filed. The information was filed April 21, 1967, and according to the consent of defendant filed herein, she was then 17 years of age, having been born October 9, 1949. A hearing was held in chambers, upon the request of the parties and with the consent of the defendant, upon August 31 and September 1, 1967, whereupon evidence was presented and argument made on behalf of the respective parties. At the outset of the hearing, a motion was made on behalf of the defendant to dismiss the information. During the course of the hearing, certain objections arose concerning the admissibility of evidence. These, together with the case itself, were taken under advisement by the Court, and are for decision.

### I. Defendant's Motion to Dismiss

At the outset of the hearing, counsel for defendant orally moved to dismiss the information. This motion was thereafter reduced to writing, and rests upon the following grounds: (1) that the information fails to charge an offense cognizable under 18 U.S.C. § 1503 and (2) that the information has improperly laid venue in the Eastern District of Tennessee.

The information, insofar as it charges a violation of 18 U.S.C. § 1503 in this District, reads as follows:

" * * * (the defendant) did on or about the first day of September, 1965, in the Eastern District of Tennessee, Southern Division, corruptly endeavor to influence, obstruct and impede the due administration of justice in the United States District Court for said District, in that she wilfully caused to be filed an affidavit subscribed by her in support of a motion for new trial in the case of United States v. James R. Hoffa et al [D.C., 268 F.Supp. 732] (Criminal No. 11,989) in which affidavit she claimed to have had sexual intercourse with the following five petit jurors during the trial of United States v. James R. Hoffa, et al while said jurors were sequestered on the tenth floor of the Read House Hotel in Chattanooga, Tennessee: William Link; John Curbow; Ed Case; John A. Kilgore, and L. R. Burrows, which claims were false and known by her to be false when made, in violation of Section 1503, Title 18 United States Code (sic), contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The Court will take up the arguments of defendant in the order presented.

Defendant first contends that, if any crime was committed, under the allegations of the information it was that of perjury, and not obstruction of justice under Section 1503. Defendant argues that the thrust of the statute is against violence, intimidation or corruption brought to bear upon witnesses, jurors or court officials, and not to the filing of false affidavits, and that the principle of *ejusdem generis* prevents the application of the statute in this case.

Section 1503 provides as follows:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having

testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

The defendant contends that the general language at the end of this section, " * * * or corruptly * * * influences, obstructs or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice * * " embraces only acts of a similar nature as those set out earlier in the section. The government, on the other hand, contends that the general language is broad enough to include within its proscription the activity of the defendant as alleged in the information.

Defendant cites certain cases as authority for her contention in this respect. Haili v. United States (C.A. 9, 1958) 260 F.2d 744, 745, was a case wherein the defendant was convicted of a violation of Section 1503 for having associated with a probationer in knowing violation of the orders of the probation officer. The conviction was reversed on the ground that Section 1503 was not broad enough to cover defendant's conduct, the Court applying principle of *ejusdem generis* so that "the general words which follow the specific words in the enumeration of prohibited acts in the section here involved must be construed to embrace only acts similar in nature to those acts enumerated by the preceding specific words * * *" While the result in that case may have been correct, the Court is of the opinion that the language quoted from the opinion goes against the grain of most of the decisions construing Section 1503 and its predecessors, as will be further noted below. Catrino v. United States (C.A. 9, 1949), 176 F.2d 884, concerned a prosecution for both subornation of perjury and obstruction of justice in the same indictment. Defendant was accused of having procured one Renmaker to commit perjury in the course of defendant's earlier trial for selling whiskey to a minor Indian. Defendant was acquitted of the first charge and convicted of the second. The Court held that defendant had violated the obstruction of justice statute when he " 'endeavored' to procure" false testimony as a step in the accomplishment of the offense of subornation of perjury. United States v. Bufalino (C.A. 2, 1960), 285 F.2d 408, 409, was a prosecution for alleged conspiracy to obstruct justice and commit perjury by giving false and evasive testimony before federal grand juries concerning a meeting of various persons at a rural home near Apalachin, New York, in 1957. The Court held that the evidence was insufficient to support a finding that the defendants agreed to lie about the meeting or that the defendants knew at the alleged time of the conspiracy that they would be called before grand juries. During the course of the latter holding, the Court made the statement, quoted by defendant, that:

"Falsehoods given before non-judicial inquiries are not encompassed within 18 U.S.C. § 1503, the federal obstruction of justice statute."

The Court apparently referred to the police interrogation of the defendants, during which it might be said that defendants were evasive or untruthful. In United States v. Scoratow (D.C.Pa., 1956), 137 F.Supp. 620, it was held that an "obstruction of justice" under Section 1503 must be in relation to a proceeding pending in federal court, and that a threat to kill a person if such person divulged information of a certain nature to the FBI, prior to the filing of any complaint with a United States commissioner, was not a violation of Section 1503.

■ In cases involving Section 1503, a number of courts have stated that Section 1503 is broad in its application and proscribes a wide variety of conduct which, though not specifically described in the statute, interferes with the administration of justice. See Catrino v. United States, supra; Samples v. United States (C.A. 5, 1941), 121 F.2d 263, cert. den. 314 U.S. 622, 62 S.Ct. 129, 86 L.Ed. 530; United States v. Solow (D.C.N.Y., 1956), 138 F.Supp. 812; United States v. Bittinger (D.C.Mo., 1876), 24 Fed.Cas. No. 14,598, p. 1149; United States v. Cohen (D.C.Conn., 1962), 202 F.Supp. 587; United States v. Polakoff (C.A. 2, 1941), 121 F.2d 333, cert. den. 314 U.S. 626, 62 S.Ct. 107, 86 L.Ed. 503. In *Catrino*, the Court made this observation:

> "The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined. The concept of 'justice' upon which the foundations of our society rest and which courts and judges are sworn to uphold encompasses not only the right of an accused to a fair trial, but it also calls for punishment if the accused is found guilty. This concept merely recognizes the inherent right of society to protect itself and its innocent members from vicious acts which imperil one of the most vital safeguards of our system of law. It is well to emphasize this wholesome idea as we contemplate the mounting waves of crime."

The Court in *Samples* noted that:

> "The (obstruction of justice) statute is one of the most important laws ever adopted. It is designed to protect witnesses in Federal courts *and also* to prevent a miscarriage of Justice by corrupt methods. * * *" (Emphasis added)

The Court agrees with the Court in *Haili* that the term "administration of justice" has some limits in its usage in Section 1503, but the Court is of the opinion that the conduct with which defendant is charged in the information is within the purview of that code section.

A close analogy is presented by the case of United States v. Cohen (D.C.Conn., 1962), 202 F.Supp. 587. There the defendant was charged with having endeavored to corruptly obstruct and impede the due administration of justice by presenting false statements and causing to be presented a falsely signed lease contract to a federal grand jury, in violation of Section 1503. Defendant claimed that his alleged conduct might constitute perjury, but that perjury is not obstruction of justice. He further contended that to charge him with obstruction of justice instead of perjury deprived him of the stricter rules of proof in perjury cases, and also that the general clause of the statute embraces only acts of a similar type or class as those specifically enumerated in the forepart of the statute. The Court quoted language from several cases supporting broad application of the obstruction of justice statute, including the following language from United States v. Solow, supra:

> "(The obstruction of justice statute) is all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice."

The Court in *Cohen* then went on to deny the defendant's motion to dismiss the indictment:

> "Certainly it is as much an 'obstruction of justice' to cause to be presented to a grand jury a false document, as it is to destroy a document which is the subject of a grand jury investigation. The proffering of misleading documents intended to deceive the grand jury toward a false finding is no less corrupt than the fraudulent concealment of facts by the wilful destruction of documents.
>
> "'* * * obstruction of justice may well take the form of "'concealing'" from an authorized tribunal information germane to its functions.' (Citation omitted)
>
> "Although the obstruction of justice statute, § 1503, and the perjury statute,

§ 1621, overlap to some extent such is not a valid reason to bar a prosecution under either, when the facts so justify. * * * "

The Court is of the opinion that wilfully causing a false affidavit to be filed in support of a motion for new trial before a United States Court would constitute an endeavor to obstruct justice and would be punishable under Section 1503. The Court is of the opinion that the instant information states an offense in violation of that section.

■ Defendant next contends that the information should be dismissed because it improperly lays venue in this District. The defendant asserts that the affidavit upon which the government relies was executed in Washington, D. C. She contends that the offense charged is that of executing a false affidavit. In fact, the information charges the defendant with having "wilfully caused to be filed" a false affidavit, in this District, before this Court. Under the allegations in the information, the endeavor to influence, obstruct or impede the due administration of justice occurred in this District and Division. The Court is of the opinion that, under the allegations of the information, venue is properly laid in this District. The fact that venue might also have existed in the District of Columbia upon some other charge, such as perjury, or even upon the same charge, would not operate to deny venue from also lying in this District. See 18 U.S.C. § 3237, wherein it is provided that an offense committed in more than one district may be prosecuted "in any district in which such offense was begun, continued or completed".

## II.  Objections to Evidence

Upon the trial of this case the Court reserved a ruling with respect to the admissibility of the testimony of the witness, Troyce Dean Henry. At the conclusion of the trial the parties stipulated into the record in this case the testimony of this witness as given two days previously in the trial of the United States of America v. Catherine Johnson, Criminal No. 12,427, but subject to the government's objection that the evidence was irrelevant. The objection will be overruled and the testimony admitted into the record in this case.

■ At the time of the trial the defendant objected to the testimony of Joseph L. Fleming, a special agent of the Federal Bureau of Investigation, with regard to an interview with the defendant. The Court overruled the objection. The objection is now renewed. It is the position of the defendant that the testimony should have been excluded under the rule laid down in the case of Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694. It is the contention of the defendant in this regard that the agent failed to notify the defendant of her right to have appointed counsel and that he persisted in the interview after being advised by the defendant that she had been instructed by her attorney not to discuss the matter. The undisputed evidence in this regard is that Special Agent Fleming, along with another special agent, went to the defendant's home on May 11, 1966. Upon introducing themselves, the defendant invited them into her livingroom where they were all three seated. The testimony then reflects that the following occurred:

"Q Tell us what happened.

"A After we had identified ourselves, Mrs. Clark at that time was advised that she didn't have to make any statement at all, she didn't have to answer any questions that we might ask her and that she had the right to consult an attorney and anything she might say could be used against her in a court of law.

"Q Did she have any response to that?

"A Not at that specific time. We then advised her that we were conducting an investigation concerning certain affidavits filed by individuals in Chattanooga, in connection with the Hoffa trial that had been held here.

"At that time she said that she had been expecting a visit from the FBI, that she had—

"MR. McLELLAN: (Interposing) If Your Honor please, at this time, the defendant would like to interpose an objection to this conversation on the ground that the witness has not testified that he told the defendant that the Government—if she didn't have an attorney that the Government would furnish one.

*"BY MR. MITTLER:*

"Q When you told her she had a right to an attorney, did she say whether or not she had one?

"A She said she—not at that specific time. Shortly thereafter she said she had an attorney in Washington, D. C., who told her not to answer any questions whatsoever that the FBI might ask her.

"Q Was she placed under arrest?

"A No, she was not.

"Q Was she in custody?

"A No, sir."

At the time of the interview the defendant was not in any way restrained of her freedom. She was not in arrest. She was not in custody. The interview was sought in her own home. At that time no indictment had been returned against her and one was not returned for almost a year thereafter. No warrant for her arrest was outstanding and no charge had been made against her. The interview was entirely an investigative interview. The Court is accordingly of the opinion that the rule in the *Miranda* case would not apply. As stated by the Supreme Court in that case:

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. * * * In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at pp. 477–478, 86 S.Ct. at p. 1614.

Under the circumstances here presented, the Court is of the opinion that the statements of the defendant to Agent Fleming, having been voluntarily given, were properly received into evidence.

In connection with the testimony of the government witness, Mary Ann Gordon Francis, the Court sustained the objection of the defendant to certain portions of that witness's testimony, including that portion relating to any alleged payment of money unto the defendant in connection with the affidavit here in issue. The Court was of the opinion that the evidence was too uncertain and speculative to warrant its admission. The government now concedes the correctness of the Court's ruling in this regard and itself moves to strike the remainder of her testimony following the above stated objectionable part. Accordingly, the testimony of the witness will be stricken commencing upon page 298 of the record and continuing to the completion of her testimony and the same shall not be considered in determining the status of the defendant under the juvenile information.

### *III. Judgment*

■ There remains for adjudication the issue of whether the defendant has committed acts which would render her a juvenile delinquent under the charges in the information and under the evidence admitted upon the trial. The Court is of the opinion that the evidence establishes beyond any reasonable doubt that the defendant did knowingly and willfully endeavor to influence, obstruct or impede the due administration of justice in violation of 18 U.S.C. § 1503 by knowingly and willfully causing to be filed in the case of United States of America v. Hoffa, et al., Criminal No. 11,989, 268 F. Supp. 732, in this court, an affidavit which she knew to be false and in which she falsely accused a number of jurors during the course of that trial with having had sexual intercourse with her and having engaged in other misconduct while sequestered under orders of the Court.

That the charges of misconduct on the part of the jurors contained in the affi-

davit are false in their entirety is not disputed in the record upon this trial. Their falsity is attested to by every witness who testified with respect to these matters. Their truth is asserted by no one. The only matters placed in issue by the defendant is the sufficiency of the evidence with respect to the execution of the affidavit by the defendant and with respect to her having willfully caused the same to be filed in the case of United States of America v. Hoffa, et al. with the intent to influence, obstruct or impede the due administration of justice. It was stipulated by the parties that the affidavit purporting to have been signed by Bobbie Ann Sells was in fact filed in the said criminal proceedings in support of the defendant's motion for new trial (Tr. p. 44). It was further stipulated that the defendant, Patricia Ann Clark, has also been known as Bobbie Ann Sells. As reflected by the testimony of Special Agent Fleming, the defendant herself admitted execution of the affidavit in the name of Bobbie Ann Sells (Tr. p. 247. See also Exhibit No. 8). The testimony of the witness Francis would corroborate the same.

With respect to the filing of the affidavit, the affidavit shows upon its face an intent that it be used in the case of United States v. Hoffa, et al. The affidavit makes repeated reference to the "Hoffa trial" held in Chattanooga, Tennessee. It charges jurors and marshals in the course of that trial with having committed gross acts of misconduct. When the contents of the affidavit are considered along with the clearly established fact that the defendant executed the affidavit, the undisputed fact that the affidavit was false in its charges of misconduct on the part of jurors and marshals, the fact that its falsity was of necessity known to the defendant, and the stipulation that the affidavit was in fact filed in the case of United States v. Hoffa, et al., Criminal No. 11,989, in the opinion of the Court the only reasonable conclusion which can be drawn is that the defendant knowingly and willfully caused the false affidavit to be filed in the case

of United States v. Hoffa, et al. Criminal No. 11,989, in an endeavor to influence, obstruct or impede the due administration of justice. No reasonable grounds exist for doubting these matters.

■ The Court is accordingly of the opinion that the evidence in this case establishes beyond any reasonable doubt that the defendant is a juvenile delinquent as charged in the information. The Court will desire to have a presentence investigation in this case before proceeding to pronounce judgment. The defendant is accordingly referred unto the United States Probation Office for this District for the making of a presentence investigation and report. The setting of a date for sentencing will await the receipt by the Court of the presentence report.