PEOPLE *v.* ROGERS

OPINION OF THE COURT

1. CRIMINAL LAW—DUE PROCESS—PRIVILEGE AGAINST SELF-INCRIMINATION—CUSTODIAL INTERROGATION.

Defendant accused of first-degree murder who, in the afternoon after the crime was committed, volunteered certain information to police officers who were questioning defendant's grandmother at her home was not in custody or deprived of freedom of action at the time he gave this information to the police and therefore his privilege against self-incrimination was not violated even though he was not given the warnings that he had a right to remain silent, that anything he said could be used against him in court, and that he had a right to the assistance of counsel whether he could afford it or not.

2. SAME—DUE PROCESS—PRIVILEGE AGAINST SELF-INCRIMINATION—CUSTODIAL INTERROGATION.

When a person is in custody is determined by a number of circumstances and it cannot be said that a person must actually

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  29 Am Jur 2d, Evidence § 545.
[3–6]  29 Am Jur 2d, Evidence § 790.

be taken to a police station before he can be said to be in custody and therefore entitled before questioning to be warned of his rights to remain silent and to be assisted by counsel.

3. SAME—EVIDENCE—INFLAMMATORY PICTURES—PURPOSE OF ADMISSION.

Trial court's admission in evidence of two color slides, one a photograph of the entire body of a murder victim exactly as it was found and the other a close-up of the face of the victim, held, a proper exercise of the trial court's discretion, since the pictures do throw light on material facts in that they tend to show the positive motive of sexual aberration, to show the location in relation to the body of certain fingerprints, to establish beyond reasonable doubt the identity of the deceased, and to show the manner in which death occurred.

4. SAME—EVIDENCE—INFLAMMATORY PHOTOGRAPHS—MATERIAL EVIDENCE.

Trial court acted properly in examining certain photographs of a murder victim that were enlightening on certain material points in issue out of the presence of the jury, and then only allowing into evidence the two least inflammatory pictures, and in giving the jury a cautionary instruction on the exact purpose of admitting the photographs.

CONCURRING OPINION

T. G. KAVANAGH, J.

5. CRIMINAL LAW—EVIDENCE—INFLAMMATORY PHOTOGRAPHS.

*A party seeking admission into evidence of photographs that could have an inflammatory effect on a jury must first establish that no alternative methods of proof are available or that an issue is so highly controverted as to be incapable of proof through other means.*

6. SAME—EVIDENCE—INFLAMMATORY PHOTOGRAPHS.

*Two photographs showing a close-up of the face of a person who was murdered by being smothered with a pillow and showing her body exactly as it was found, with a dinner fork thrust into the abdomen, were not so inflammatory and prejudicial that their admission into evidence warrants reversal.*

Appeal from Hillsdale, McIntyre (Robert W.), J. Submitted Division 2 April 2, 1968, at Lansing. (Docket No. 4,105.) Decided October 25, 1968.

Wilford Gary Rogers was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James B. Parker,* Prosecuting Attorney, for the people.

*Charles G. Gibbons,* for defendant.

FOLEY, J. This case comes before us for review of defendant's conviction for the first degree murder of Maude Bondsteel. Defendant has been sentenced to a term of life in prison.

Maude Bondsteel, 81 years of age, was found in the living room of her home at 145 east South street, Hillsdale, January 23, 1967, at approximately 10 a.m. by a neighbor. The cause of death was suffocation by smothering. The victim's chest, ribs, and breastbone were crushed. In addition to these injuries, Mrs. Bondsteel had been stabbed in the abdomen with a fork causing damage to the liver. When the body was found the fork was still lodged in the abdomen. The death was determined to have occurred after 8 p.m. on January 22, 1967, or in the early morning of January 23, 1967.

At approximately 2:15 p.m. on January 23, 1967, state police officers visited the home of Nina McKibbins, who is the grandmother of the defendant, Wilford Gary Rogers, and sister-in-law of the victim, to obtain background information. During the course of a conversation between Mrs. McKibbins and the officers, Mrs. McKibbins advised the officers that on the night before she had a telephone conversation with the deceased at approximately 8 p.m. and that her grandson, the defendant, had visited the home of the deceased thereafter. Defendant then volunteered that he had been to the

home of the deceased at approximately 10:30 p.m. Sunday, January 22, but did not receive a response. The officers then questioned the defendant who stated he was home on leave from the armed services and presented verification thereof upon the request of the officers. During the course of the interrogation, the defendant stated he did not gain entry to the deceased's home on the evening in question. The officers also requested defendant to turn over the clothes he wore on the evening of January 22 and he complied. The defendant also complied with the request of the officers to accompany them to the Hillsdale police station where his fingerprints were taken at approximately 2:35 p.m. on the same day. He was fingerprinted at the station and released at approximately 3 p.m. on the same day.

Defendant was formally placed under arrest for the murder of his aunt at approximately 8 p.m. on January 23, 1967. At that time he signed and executed a waiver of rights form, which was to be admitted into evidence at his trial, and thereafter made a statement to the police substantially conforming to the one made at his grandmother's home earlier in the day.

The evidence presented during trial against the defendant was entirely circumstantial. Among the evidence introduced against defendant were statements, later shown to be inconsistent with other proofs, made by him during the initial police interrogation at the home of Mrs. McKibbins. Also introduced by the prosecution were two photographs of Mrs. Bondsteel, as she was found after her demise. Other evidence included: fingerprints of defendant found inside decedent's home (a statement of defendant was also introduced to the effect that he had not been inside decedent's home in 15 months);

pubic and head hair found on the decedent similar
to that of defendant; certain fibers taken from
clothing of defendant, which he admitted wearing
on the evening of January 22, and which were iden-
tified as being similar to those taken from a blanket
on the couch where deceased was found; defendant's
face, back, and underneath his arms contained fresh
scratches on January 23; a witness testified that he
did not notice these scratches on defendant's face
during a visit by defendant at approximately 9:30
or 10 p.m. on the evening of January 22; defendant's
statement that he received these scratches from a
bush; and the area where the fingerprints, identified
as defendant's, were found had been thoroughly
scrubbed with water and detergent in September,
1966.

Although defendant raises several questions on
appeal, only two have merit and will be considered
in this opinion.

It is contended by the defendant that the state
police officers, under *Miranda* v. *Arizona* (1966),
384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10
ALR3d 974), were obligated to advise him of his
Fifth and Sixth Amendment[1] rights prior to the
interrogation which took place in the home of his
aunt on January 23, 1967 at approximately 2:30
p.m.    He contends further that since the record
clearly reflects that the officers failed to give the
*Miranda* warning prior to or during such interview,
statements elicited from him during such interview
are inadmissible.    In *Miranda, supra,* p 477, the
Court stated:

"The principles announced today deal with the
protection which must be given to the privilege
against self-incrimination when the individual is
first subjected to police interrogation while in cus-

---

[1] US Const, Ams 5, 6.

tody at the station or otherwise deprived of his freedom of action in any significant way. It is at this point that our adversary system of criminal proceeding commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today or under any other system which may be devised and found effective, the safeguards to be erected about the privilege must come into play at this point. Our decision is not intended to hamper the traditional function of police officers investigating crime."

Before defendant's contention can be afforded substance under *Miranda,* the question that must be answered is whether defendant was in custody or deprived of his freedom of action in any significant way during the initial interrogation by the state police.

It is now settled that *Miranda* has applicability in instances where a defendant is under "custodial interrogation." *People* v. *Gilbert* (1967), 8 Mich App 393. Therefore, it is necessary for this Court to determine under what circumstances the statements of defendant were made. Here the initial police interrogation of defendant took place at the home of his grandmother and in her presence. The defendant volunteered that he had been at the deceased's home at approximately 10:30 p.m. while his grandmother was being interrogated. It was only after this statement that the state police officers interrogated him. The circumstances here are not analogous to the "incommunicado interrogation" in the so-called "police-dominated atmosphere" stressed in *Miranda.*

We conclude that prior to the time officers took defendant to the station for fingerprinting, he was not in custody nor was he deprived of his freedom of action in any significant way. Therefore, the

statements made during this period are not excludable under *Miranda*.[2]  In reaching this decision, it should be made clear that we have not decided that a station-house interrogation is a prerequisite to the application of the Fifth and Sixth Amendment rights to statements made by the accused to police officers.  We have only ruled in this case that the circumstances of the initial afternoon police interrogation of defendant at the home of his grandmother do not come within the custodial edict of *Miranda*.  See, also, *People* v. *Gilbert, supra; United States* v. *Essex* (ED Tenn, 1967), 275 F Supp 393.

The second question we have considered is whether two color photo-slides showing the nude body of the victim were so prejudicial as to deny the defendant a fair and impartial trial.

The record discloses that the prosecution sought to introduce six or seven color photo-slides of the body of the deceased, all taken from different views. Defense objected to the inflammatory nature of the photo-slides.  The court, upon the objection, viewed all the slides out of the presence of the jury.  After the viewing and argument by counsel, the court admitted two color slides, stating in part:

"These pictures, or some of them, tend to provide a motive which is not usually seen in crimes of violence; a motive which is not based upon a reasonable man, nor necessarily anger, or self-defense; or anything of that nature, but pretty well indicates to the court that a motive could possibly be found in sexual aberration.  The people have a right to show that.

"So I'm going to allow the pictures to this extent, Mr. Parker; you may show one picture showing the

---

[2] No statement made between the time the defendant was taken to the station for fingerprinting and his release thereafter was offered into evidence.

uncovered face of the deceased, and one picture showing the body of the deceased. That picture to be one most illustrative of the position of the finger-prints with regard to the body. No other picture of the body of the deceased will be allowed."

One slide was a close-up showing the bruised face and upper chest of the defendant. The second, from a distance, showed the nude body of the victim, except for the face, which was covered with a pillow, with a fork protruding from the abdomen. The second slide showed the exact state in which the victim was found at the time of discovery, and door casings, in close proximity to the body of the deceased, upon which defendant's fingerprints were found.

Defense counsel, in his opening statement, stressed that the absence of any motive was an essential part of defendant's case.

The county coroner and a pathologist both established the cause of death as suffocation. The pathologist stated death resulted from violence.

The trial court admitted the aforementioned slides on the following grounds:

1. To establish the identity of the deceased.

2. To show the relationship of the victim's body to the location of certain latent fingerprints identified as defendant's.

3. To show that sexual aberration was the motive for the crime.

The admissibility of demonstrative evidence of this type is left to the sound discretion of the trial court.

In *People* v. *Becker* (1942), 300 Mich 562, our Supreme Court, while ruling that a nude photograph of a victim has probative value, stated (p 565):

"The general rule upon the admissibility of this kind of evidence is that it is admissible if helpful in throwing light upon any material point in issue."

See, also, Gillespie, Michigan Criminal Law and Procedure, 2d ed, § 460.

In *Becker, supra,* the pictures were admitted since they were important to show the course of the bullet. This was material to the issue of self-defense raised in the case.

In *People* v. *Freeman* (1965), 1 Mich App 63, pictures of the deceased were admitted to show the six bullet holes in the victim to rebut the claim of self-defense.

Motive is a relevant fact in the prosecution of the crime of murder, although not an essential fact in the proof thereof. *People* v. *Cipriano* (1927), 238 Mich 332. In the instant case the defense counsel stressed that great importance was placed upon the lack of motive, thus creating greater relevancy in evidence tending to show sexual aberration.

The fact that the instant case was developed upon circumstantial evidence added greater importance to the location of defendant's fingerprints in relation to the decedent's body. The door casings upon which defendant's latent fingerprints were discovered appeared in close proximity to the decedent, as shown in the photo-slide. This had added importance in view of defendant's denial of having entered the decedent's home in a period of 15 months and, further, that the interior of the home had been completely washed with water and detergent since his admitted presence in the home.

The prosecution has the burden of establishing identity of the deceased beyond a reasonable doubt. The use of a photo-slide for this purpose has great probative value. Testimony showed the cause of

death as suffocation. The photo-slide showing the exact state of the body, when found with a pillow covering the head of the victim, has great materiality in establishing the manner in which death occurred.

An accurate portrayal of the brutal slaying of the deceased, Maude Bondsteel, whether oral or by photo-slide, would be repulsive and gruesome. The very nature of the crime and the surrounding facts, if clearly shown, offend the conscience of man. This, however, is not reason for the deletion of oral or demonstrative evidence if in fact such evidence is accurate, has probative value and throws light upon material issues.

This Court has examined the photo-slides very carefully in light of the evidence adduced at the trial and the claim that the slides were inflammatory. The trial court acted properly in viewing all of the slides outside the presence of the jury and excluding those of an inflammatory nature. Further, the trial court appropriately admonished the jury as to the use of the slides admitted into evidence.

It is the decision of this Court that the photo-slides of the decedent in the instant case had probative value and did indeed throw light upon material issues of fact.

We find no error.

Affirmed.

LESINSKI, C. J., concurred with FOLEY, J.

T. G. KAVANAGH, J. (*concurring*). I concur in the result reached by my colleagues because the photographs before us were not so gruesome as to be inflammatory. However, in my view, for probative value of demonstrative evidence to outweigh preju-

dicial effect more is required than a mere showing of materiality and relevancy. A trial court, to avoid even the risk of unfairness, should demand that a photograph be admitted only after the people establish either that no alternative methods of proof are available or that an issue is so highly controverted as to be incapable of proof through alternative means. In the present case, victim's identity, proximity of fingerprints and motive were capable of proof through other methods which should have first been exhausted before admission of the photos was considered. Having failed to require exhaustion of alternative proofs prior to admitting the photographs, the trial court abused its discretion. However, these pictures were not so prejudicial that their admission warrants reversal.