PEOPLE *v.* CARTWRIGHT

1. Criminal Law — Identification — Pre-Trial Identification — Face-To-Face Confrontation — Constitutional Law.
   Face-to-face identification confrontations are to be discouraged; however, they are not *per se* unconstitutional.

---

References for Points in Headnotes

[1, 2]  21 Am Jur 2d, Criminal Law § 368.
   Admissibility of evidence as to extrajudicial or pretrial identification of accused.   71 ALR2d 449.
[3, 4]  29 Am Jur 2d, Evidence §§ 555-557.
   What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation.   31 ALR3d 565.
[5–7]  29 Am Jur 2d, Evidence § 610 *et seq.*

2. Criminal Law — Identification — Face-To-Face Confrontation — Due Process.

A witness's observing the defendant and his co-defendant, both of whom had been placed under arrest, in the back seat of a police car at the scene of the crime was not so unnecessarily suggestive as to be a denial of due process law where the witness testified that at the time of the breaking and entering, with which the defendant was charged, she had a full view of the two burglars.

3. Constitutional Law—Warning of Rights—Custodial Interrogation.

A warning of rights is necessary only in a custodial interrogation.

4. Constitutional Law—Warning of Rights.

A warning of rights did not have to be given to the defendant where the defendant was stopped on the street by police officers, asked whether he had been with another man and whether he had been running, the officers had not drawn their pistols, the officers had not physically deprived the defendant of his freedom in any significant way and the officers had not yet announced an arrest, because the encounter was a mere investigatory street encounter.

5. Criminal Law — Statements of Codefendant — Joint Trial — Admissibility — Constitutional Law.

Incriminating extrajudicial statements of a non-testifying codefendant are constitutionally inadmissible at a joint trial of the defendant and the codefendant who made the statements, irrespective of any instructions limiting their use; the prohibition of the use of the statements is retroactive and applicable to the states.

6. Contitutional Law—Criminal Law—Statements of Codefendant—Joint Trial—Retroactivity.

The Federal decision declaring that the constitutional inadmissibility of incriminating extrajudicial statements of a nontestifying codefendant into evidence at a joint trial of the defendant and the codefendant who made the statements was made retroactive because the admission of the statements presented a serious risk that the issue of the defendant's guilt or innocence may not have been reliably determined.

7. Constitutional Law — Criminal Law — Statements of Codefendant—Joint Trial—Retroactivity.

Admission of testimony by a police officer that a non-testifying codefendant, in reply to questions asked immediately before

his arrest, had said that he and the defendant had been together, that they had not been running, and after the police officer placed his hand on the speaker's chest, that he had been running did not mandate applying retroactive a federal decisional rule that incriminating extra-judicial statements of a non-testifying codefendant are not admissible into the joint trial of the defendant and the codefendant who made the statements where the defendant, just before his arrest, had said that he had not been running and that he had been with the codefendant, and the fact that the two men had been running was established by testimony that independent of the police officer's recounting the codefendant's admission that he had been running, because the admission of the statements did not present a serious risk that the defendant's guilt might not have been reliably determined.

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 May 7, 1970, at Detroit. (Docket No. 7,720.) Decided September 30, 1970. Leave to appeal denied December 31, 1970. 384 Mich 792.

William D. Cartwright was convicted of breaking and entering an occupied dwelling with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas R. Lewis,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: V. J. Brennan, P. J., and McGregor and Ager,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

V. J. Brennan, P. J.   Defendant William Cart-wright, along with a codefendant, Lawrence Gulley, was tried and convicted by a jury on July 19, 1967, of breaking and entering an occupied dwelling with intent to commit larceny.   MCLA § 750.110 (Stat Ann 1970 Cum Supp § 28.305).   The facts relevant to his four assignments of error are summarized as follows:

Around 4:30 in the afternoon of January 16, 1967, Mrs. Ethel Paige was standing near the front window of her house on Field Street in Detroit when she saw two Negro men walk up the stairs to the porch of a house across the street, force the door, and enter.   She telephoned the police imme-diately.   One of the policemen who responded to her call, Officer Stewart, saw a young Negro man, wear-ing a dark coat, jump the fence and run off down the alley just as he approached the house in ques-tion.   Officer Stewart pursued the man, but unsuc-cessfully, and radioed the squad cars in the area to be on the lookout for a Negro man wearing a dark jacket.

Some minutes later, Officers Donald Grode and Warren Golubosky, who had heard Stewart's radio call while patroling the neighborhood in their squad car, saw two young Negro men, one about 50 feet ahead of the other, walking along a residential street about three blocks west and four blocks north of the scene of the crime.   One of them—defendant Gulley—was wearing a black leather jacket.   The officers passed by slowly and then pulled to the curb and stopped the men, who by this time were walking abreast.   Officer Golubosky opened the en-counter by asking whether they had been together. Both replied that they had.   Noticing that Gulley was breathing rapidly, Officer Golubosky asked them whether they had been running.   Both denied that

they had, but when Golubosky put a hand to Gulley's chest and felt a rapid heart beat, Gulley admitted that he had, but only for the last half block or so. Gulley, along with the other man, defendant Cartwright, was then placed under arrest, informed of his rights under *Miranda* v. *Arizona*,[1] and taken to the scene of the crime. While there, Cartwright and Gulley were observed by Mrs. Paige as they sat in the back seat of the squad car. Mrs. Paige was not asked at the time to identify the two men.

The first assignment of error concerns Mrs. Paige's observation of the defendant and Gulley while they were sitting in the squad car. The defendant contends that her observation amounts to a confrontation "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law," *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199), and, that therefore, allowing her in-court identification, said to be tainted by the observation, was error.

From a review of the record, we conclude that the defendant has not sustained his burden of showing that the confrontation amounted to a denial of due process of law. Although face-to-face confrontations, as opposed to lineups, are to be discouraged, they are not *per se* unconstitutional. *Stovall* v. *Denno, supra*. The accused must show something more than just the fact of the face-to-face confrontation. *People* v. *Floyd* (1968), 15 Mich App 284; *Russell* v. *United States* (1969), 133 US App DC 77 (408 F2d 1280), *cert. den.* (1969), 395 US 928 (89 S Ct 1786, 23 L Ed 2d 245). In the instant case, Mrs. Paige testified unequivocally that she enjoyed a full view of the burglars as they en-

---

[1] (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

tered the house and that Cartwright and Gulley were the burglars. The credibility of her testimony was a question for the jury, *People* v. *Nugent* (1969), 21 Mich App 58, and the jury, after hearing the cross-examination and argument by the defense, resolved the question against the defendant. There was no error.

At the trial, Officer Golubosky related Gulley's and Cartwright's statements that they had been together. Defense counsel immediately objected to the admission of any statements made by Cartwright and Gulley during the encounter and moved for a mistrial, citing *Miranda* v. *Arizona, supra*. The jury was excused and a hearing was conducted to determine the applicability of *Miranda*. Following the hearing and oral argument, the court denied the motion and ordered Golubosky to begin his account of the arrest anew but (inexplicably) without reference to the statement "yes, we have been together." The officer began again, this time omitting the statement, and testified that both men, when asked, denied that they had been running but that Gulley admitted that he had been running when the answer was challenged with a hand on his chest.

In his second and third assignments of error, the defendant renews his objection to the use of these statements and cites *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476) along with *Miranda*. We conclude that neither of these cases requires reversal of his conviction.

The trial court was correct in ruling *Miranda* inapplicable. The warning requirement of *Miranda* is expressly limited to custodial interrogation:

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is

first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." 384 US 436, 477 (86 S Ct 1612, 16 L Ed 2d 694, 10 ALR3d 974).

The statements in the instant case were elicited during an investigatory street encounter by officers who had not drawn their pistols or otherwise physically deprived the defendant of his freedom in any significant way and who had not yet announced an arrest. The defendant's rights under *Miranda* had simply not attached when the statements were made. See *People* v. *Gilbert* (1967), 8 Mich App 393; *People* v. *Rogers* (1968), 14 Mich App 207; *People* v. *Robinson* (1970), 22 Mich App 124.

In *Bruton,* decided some ten months after Cartwright was convicted, the Supreme Court held that incriminating extrajudicial statements of a non-testifying codefendant are constitutionally inadmissible in evidence at a joint trial, irrespective of any bench instructions limiting their use to the codefendant. In *Roberts* v. *Russell* (1968), 392 US 293 (88 S Ct 1921, 20 L Ed 2d 1100), the Court declared *Bruton* to be retroactive and applicable to the states. See *People* v. *Shirk* (1970), 383 Mich 180; *People* v. *Spells* (1969), 16 Mich App 609.

The codefendant in the instant case, Gulley, did not take the witness stand. (Nor did defendant Cartwright.) The statements are somewhat damaging to Cartwright in that 1) they place him together with Gulley at the time of the burglary to make a team of two when a team of two burglars was sought; and 2) they show that Gulley and Cartwright lied when first questioned. Yet, while the testimony relating these statements may arguably fall within the *Bruton* rule, it cannot be regarded as subject to the rule's retroactive application.

In *Roberts, supra,* 294, 295, the Court made clear the reason for retroactive application:

"Despite the cautionary instruction, the admission of a defendant's confession which implicates a codefendant results in such a 'serious flaw.' The retroactivity of the holding in *Bruton* is therefore required; the error 'went to the basis of fair hearing and trial because the procedural apparatus never assured the [petitioner] a fair determination' of his guilt or innocence.

\*    \*    \*

"And even if the impact of retroactivity may be significant, the constitutional error presents a serious·risk that the issue of guilt or innocence may not have been reliably determined."

None of the statements in question, unlike those in *Bruton* and *Roberts,* even approximates a confession or an accusation of guilt. Two of them—"Yes, we have been together" and "No, we have not been running"—were attributed to the defendant himself. Yet the defendant neither attempted to controvert the statements nor sought an instruction limiting their use to Gulley. The third statement, while not Cartwright's, was an assertion that was established by means other than Gulley's words. Officer Golubosky testified that Gulley was breathing rapidly, that his chest was heaving and that his breath was short as it condensed in the cold air. One could reasonably conclude independently of the third statement that Gulley had indeed been running. In short, admission of the three statements did not "present a serious risk that the issue of guilt or innocence may not have been reliably determined."

In his final assignment of error, the defendant complains of the following remarks of the prosecut-

ing attorney, made in reply to the closing argument of Gulley's trial counsel:

"Now, to Mr. Harris [*trial counsel*], there seems to be a very important question as to why I didn't ask Officer Stewart, 'Do you see that man in court?' Well, if it was such a very important question and if it left such an imprint on Mr. Harris' mind that he argued it so much to you, let me ask the question: Why didn't Mr. Harris ask the police officer, 'Do you see that man in Court?' It is another ruse."

These remarks were apparently designed to counter any implication that the absence of an in-court identification by Officer Stewart was due to an inability on his part to match the face of either Gulley or Cartwright with the known face of the fleeing burglar. Officer Stewart, in relating the chase through the backyard, did not suggest that he was able to view the burglar's face. Indeed the strong implication of his testimony was that a view was not possible under the circumstances. Thus his failure to identify the burglar in court, along with the prosecuting attorney's failure to ask him to identify either defendant, is of little significance. For that reason, the rhetorical question of the prosecuting attorney was not only harmless, but constituted permissible rebuttal to the argument of defense counsel. Compare *People* v. *Humphreys* (1970), 24 Mich App 411.

Affirmed.

All concurred.