PEOPLE *v.* THOMAS

PEOPLE *v.* GRANT

Opinion of the Court

1. Criminal Law—Arrest—Probable Cause.

Probable cause existed to stop the automobile defendant was driving and to arrest the defendant where the car matched the description given of the getaway vehicle used in an armed robbery and the first three digits of the license number of the defendant's car corresponded to the digits of the getaway car's license.

2. Search and Seizure—Automobiles—Search at Station—Probable Cause—Loss of Evidence.

Police officers' taking defendant's automobile to the station house after defendant's arrest in the car and making a search of the car without a warrant at the station were reasonable where the police had probable cause to stop the car, to arrest the defendant, and to search the car at the time of the arrest, because the mobility of the car threatened potential loss of evidence.

3. Criminal Law—Lineups—Participants' Dissimilarities—Prejudice.

The defendants' participation in lineups (each defendant participating in one lineup) did not prejudice either defendant

---

References for Points in Headnotes

[1] 5 Am Jur 2d, Arrest § 46.
[2] 47 Am Jur, Searches and Seizures §§ 18, 19.
Validity, under Federal Constitution, of warrantless search of automobile—Supreme Court Cases. 26 L Ed 2d 893.
[3] 21 Am Jur 2d, Criminal Law § 368.
29 Am Jur 2d, Evidence § 371.
Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.
[4, 6, 7] 29 Am Jur 2d, Evidence § 610 *et seq.*
[5] 58 Am Jur 2d, New Trial § 164 *et seq.*
[8–11] 21 Am Jur 2d, Criminal Law § 315.
Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.

where the victim testified that the two men who had robbed her were between 5'9" and 5'10" tall, the defendants were 6'4" and 6'5", and the other men in each lineup were between 5'4" and 6'4" tall, because the others resembled the victim's description of the robbers more than the defendants did.

4. CRIMINAL LAW—RIGHT OF CONFRONTATION—NONTESTIFYING CODE-FENDANT'S STATEMENT—COMMON ALIBI DEFENSE.

Admitting into defendant's and his nontestifying codefendant's joint trial a statement of the codefendant in support of his and the defendant's joint alibi did not violate defendant's right to confrontation where both the defendant and codefendant affirmatively relied upon the statement, and the defendant did not attempt to controvert the statement or to limit its use to the codefendant, because the use of the statement did not present a serious risk that the defendant's guilt or innocence may not have been reliably determined.

5. NEW TRIAL — EVIDENCE — NEWLY-DISCOVERED EVIDENCE — ELE-MENTS.

Newly-discovered evidence must be newly discovered, not merely cumulative, such as to render a different result probable on retrial, and of such a character that it could not have been produced at trial with the exercise of due diligence.

CONCURRENCE BY LEVIN, J.

6. CRIMINAL LAW—RIGHT OF CONFRONTATION—NONTESTIFYING CODE-FENDANT'S STATEMENT—APPEAL AND ERROR—STANDARD OF REVIEW.

*State courts must retroactively apply the rule requiring the reversal of a defendant's conviction when the defendant's right of confrontation has been violated by the use of a nontestifying codefendant's statements in a joint trial; courts may not decide on a case by case basis whether the rule will be given retroactive application based on the court's evaluation of the seriousness of the risk that the particular defendant's guilt or innocence was not reliably determined.*

7. CRIMINAL LAW—RIGHT OF CONFRONTATION—NONTESTIFYING CODE-FENDANT'S STATEMENT—APPEAL AND ERROR—HARMLESS ERROR.

*Allowing into evidence, in a defendant's and his nontestifying codefendant's joint trial, the codefendant's statement that he and the defendant were together at a funeral at the time the crime charged occurred was harmless error beyond a reasonable doubt where the defendant claimed the same alibi as the codefendant.*

8. CRIMINAL LAW—INEFFECTIVE COUNSEL—BURDEN OF PROOF.

*A convicted person who claims he received the ineffective assistance of trial counsel must make a testimonial record at the trial level in connection with a motion for a new trial which supports his claim by proof and which excludes reasonable hypotheses consistent with the view that his lawyer represented him adequately.*

9. CRIMINAL LAW—INEFFECTIVE COUNSEL—INTERROGATING COUNSEL—ATTORNEY-CLIENT PRIVILEGE.

*A defendant who attacks the adequacy of the representation he received at his trial waives the attorney-client privilege to the extent necessary to permit an inquiry concerning the adequacy of the representation.*

10. CRIMINAL LAW—INEFFECTIVE COUNSEL—COURT'S INTERROGATING ATTORNEY—ATTORNEY-CLIENT PRIVILEGE.

*Trial judge's stating, when denying defendant's motion for a new trial, that he was precluded by the attorney-client privilege from asking defendant's attorney why he had not called an alibi witness, who had been present during trial, was erroneous; to hold the attorney-client privilege as thus applicable is to shield inadequate representation.*

11. CRIMINAL LAW—EFFECTIVE COUNSEL—FAILURE TO CALL WITNESS.

*Defendants have not established that they were ineffectively represented by counsel even though trial counsel failed to call an alibi witness who was known to them and present in court during the trial where counsel relied upon the testimony of another alibi witness, which contradicted the testimony that the uncalled witness would have given.*

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J.  Submitted Division 1 February 2, 1971, at Detroit.  (Docket Nos. 5760, 8126.)  Decided May 21, 1971.

George Leon Thomas and Thomas Grant were convicted of armed robbery.  Defendants appeal.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Joseph A. Golden,* for defendant Thomas on appeal.

*Sol Plafkin,* for defendant Grant on appeal.

Before: Lesinski, C. J., and R. B. Burns and Levin, JJ.

Lesinski, C. J. Defendants, George Thomas and Thomas Grant, were tried jointly and convicted by a jury of armed robbery. MCLA § 750.259 (Stat Ann 1971 Cum Supp § 28.797). They appeal as of right from a denial of their motions for new trial.

On November 15, 1966, two men robbed the clerk of City Wide Cleaners at gunpoint. They were seen leaving the store by an 11-year-old boy who provided police with a description of the car in which they escaped and the first three digits of the license plate number. Eight hours later police officers observed a car matching that description with the same first three digits on the license plates. They arrested the driver, defendant Thomas, and drove the car to the precinct station where a warrantless search revealed a pistol concealed under the dashboard.

Defendant Grant was arrested on a warrant issued after Thomas, while denying participation in the robbery, told police he spent the day with Grant. Both defendants were subsequently identified at separate showups by the victim of the robbery.

Defendants' first assignment of error concerns the propriety of the search of the car and the ad-

mission into evidence of the seized pistol. While the search at the police station cannot properly be said to be incident to the arrest, *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777), we affirm the trial court's ruling that the police had probable cause to stop a car matching the description of the wanted vehicle and arrest the driver. Immediate search of the automobile at the scene would have been permissible. *Carroll* v. *United States* (1925), 267 US 132 (45 S Ct 280, 69 L Ed 543, 39 ALR 790); *People* v. *Miller* (1970), 26 Mich App 665. It was not unreasonable to take the car to the police station to perform the search where the probable cause factor still obtained and the mobility of the car threatened potential loss of evidence. *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419). We find no error.

Defendants next claim that the conduct of the showups was so suggestive and conducive to mistaken identification as to violate due process of law. *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199).

The victim testified that she told police that the men who robbed her were between 5'9" and 5'10" tall. Defendant Grant, who is 6'5" tall, was identified by this witness in a lineup of other men whose heights were 5'4", 6'1", 5'9-1/2", and 5'5" respectively. Defendant Thomas, who is 6'4" tall, was similarly identified from a lineup of four other men who were between 5'7" and 5'11" tall. Since both defendants were considerably taller than the description of the wanted men, whereas the others in the lineup more closely resembled the descriptions, it is difficult to see how defendants could have been prejudiced by the showups. We note that no objection was made below to the introduction of the

identification testimony and that both defense counsel elected to utilize the disparity of height between the descriptions given and defendants' actual height to their advantage in arguments to the jury. We find no error.

During the course of the trial, a police officer investigating the robbery testified that:

"*A.* I had Mrs. Mans come into the station and I made a warrant request and I took Mrs. Mans and myself to police headquarters, to request a warrant for George Thomas. Mrs. Mans and I, we stopped at the Robbery—B and E Bureau and I showed her some pictures and she—

"*Mr. Harris:* Just a minute, I would ask that the jury be excused, if the court please.

"*The Court:* All right, the jury will step out."

Defense counsel's objection was that if testimony showed the witness identified defendants from "mug shots" it would show defendants had prior criminal records. The objection was sustained. The record does not indicate that any pictures of either of the defendants were shown to the witness, or that identification was made as a result of such procedure. Contrary to defendants' claim, there was no mention of prior criminal convictions before the jury. We find no prejudice resulted.

The defense advanced by both defendants at trial was alibi. Upon arrest, defendant Thomas told police he and Grant were attending to details of the funeral for Thomas' recently deceased uncle during the time of the robbery. The use of this exculpatory statement at trial forms the basis of defendant Grant's claim that his rights to confront and cross-examine the witnesses against him were violated within the meaning of *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476).

In *Bruton,* the Supreme Court held that incriminating extra-judicial statements of a nontestifying codefendant are constitutionally inadmissible in evidence at a joint trial, irrespective of any instructions limiting their use to only the codefendant. In *Roberts* v. *Russell* (1968), 392 US 293 (88 S Ct 1921, 20 L Ed 2d 1100), the Supreme Court declared *Bruton* retroactive and applicable to the states.

In the instant case, defendant Thomas' statement placed him with Grant at the time of the robbery, but was intended as an alibi. *Bruton* and *Roberts* both dealt with confessions and accusations of guilt. Defendant Grant neither attempted to controvert the statement nor sought an instruction limiting its use to Thomas. Instead, they both affirmatively relied on the statement, and the testimony of others, to prove their alibi defense. Under the circumstances, we hold that the use of the statement at trial did not "present a serious risk that the issue of guilt or innocence may not have been reliably determined". *Roberts, supra,* 295; *People* v. *Cartwright* (1970), 26 Mich App 687.

As a basis for their motions for new trial, defendants claimed they had new evidence in support of their alibi defense in the form of a witness whose testimony would place defendants at a funeral home at the time of the robbery. When it was shown that this witness was known to defense counsel at the time of trial and was present in the courtroom during trial, the trial judge ruled that her testimony did not meet the test of newly discovered evidence.

New evidence must be newly discovered, not merely cumulative, such as to render a different result probable on retrial, and of such kind and character that it could not have been produced at trial with the exercise of reasonable diligence. *People* v.

*Keiswetter* (1967), 7 Mich App 334. The trial judge did not abuse his discretion in ruling that the testimony of a witness known to defense counsel and present at trial was not new evidence.

Defendants' remaining assignments of error concern jury instructions given by the trial judge. Since no objections were raised on the issues below, defendants are precluded from claiming error on appeal. *People* v. *Dexter* (1967), 6 Mich App 247; *People* v. *Bradshaw* (1969), 16 Mich App 348.

Affirmed.


R. B. BURNS, J., concurred.


LEVIN, J. (*concurring*). I write separately because the United States Supreme Court's decision in *Roberts* v. *Russell*[1] making the *Bruton*[2] rule retroactive cannot properly be read as conferring authority on state and Federal trial and appellate courts to decide case-by-case whether the *Bruton* rule will be given retroactive application based on the court's evaluation of the seriousness of the risk that in the particular case at hand the issue of guilt or innocence was not reliably determined.


I.

In *Roberts* v. *Russell* the United States Supreme Court made retroactive in both Federal and state prosecutions its decision in *Bruton.* In *Bruton* the Court had ruled that the introduction of a confession of a codefendant who did not testify in the joint trial of Bruton and the nontestifying codefendant violated Bruton's Sixth Amendment right

---

[1] *Roberts* v. *Russell* (1968), 392 US 293, 294, 295 (88 S Ct 1921, 20 L Ed 2d 1100).

[2] *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476).

to confront and to have the opportunity to cross-examine his accusers and that this encroachment was not cured by the judge's instructions that the jury should disregard the confession as to Bruton.

In *People* v. *Cartwright* (1970), 26 Mich App 687, 693, 694, our Court declared that the *Bruton* rule would not be applied retroactively where it appeared that the admission of the nontestifying codefendant's statement did not "present a serious risk that the issue of guilt or innocence may not have been reliably determined". *Cartwright's* language is adopted by my colleagues in this case in affirming Thomas Grant's conviction.

My colleagues declare:

"In the instant case, defendant Thomas' statement placed him with Grant at the time of the robbery, but was intended as an alibi. *Bruton* and *Roberts* both dealt with confessions and accusations of guilt. Defendant Grant neither attempted to controvert the statement nor sought an instruction limiting its use to Thomas. Instead, they both affirmatively rely on the statement, and the testimony of others, to prove their alibi defense. Under the circumstances, we hold that the use of the statement at trial did not 'present a serious risk that the issue of guilt or innocence may not have been reliably determined.' *Roberts, supra,* 295; *People* v. *Cartwright* (1970), 26 Mich App 687."

In *Roberts* v. *Russell,* the United States Supreme Court stated unequivocally:

"This case presents the question whether *Bruton* is to be applied retroactively. We hold that it is."

True, in explaining its decision, the United States Supreme Court referred to its earlier opinions outlining the factors considered in deciding whether a new rule of law should be made retroactive. The Court quoted from its decision in *Stovall* v. *Denno*

(1967), 388 US 293, 298 (87 S Ct 1967, 18 L Ed 2d 1199):

"We have  *  *  *  retroactively applied rules of criminal procedure fashioned to correct *serious flaws* in the fact-finding process at trial."  (Emphasis supplied.)

The Court then went on to say that, despite a cautionary instruction, the admission of a nontestifying codefendant's statement is "such a 'serious flaw'. The retroactivity of the holding in *Bruton* is therefore required".  In making that statement the Court did not highlight the facts in *Roberts* v. *Russell* or in any way indicate that whether *Bruton* was retroactive would be decided case-by-case based on an evaluation of the seriousness of the flaw or the likelihood that the issue of guilt or innocence was or was not reliably determined in the case at hand. And, while the Court concluded its argument with the following statement: "And even if the impact of retroactivity may be significant, the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined", we may not properly dissect its argument— whether we agree with it or not—and undermine and limit the clear holding in *Roberts* v. *Russell* that the *Bruton* rule is retroactive in all Federal and state prosecutions.

The Michigan Supreme Court and our Court have reversed pre-*Bruton* convictions without any attempt to evaluate the seriousness of the risk that in the case at hand the issue of guilt or innocence may not have been reliably determined.[3]  Other courts[4]

[3] See *People* v. *Shirk* (1970), 383 Mich 180; *People* v. *Curley* (1968), 14 Mich App 235; *People* v. *Spells* (1969), 16 Mich App 609; *People* v. *Teal* (1969), 20 Mich App 176; *People* v. *Rollins* (1971), 33 Mich App 1.
[4] *Commonwealth* v. *Poteet* (1969), 434 Pa 230 (253 A2d 246);

and the United States Supreme Court itself[5] have reversed without any consideration of the issue which our Court has dissected out of *Roberts* v. *Russell.*

## II.

In *Chapman* v. *California* (1967), 386 US 18, 23, 24 (87 S Ct 824, 17 L Ed 2d 705, 24 ALR3d 1065), *reh den* 386 US 987 (87 S Ct 1283, 18 L Ed 2d 241), the United States Supreme Court ruled that the denial of a Federal constitutional right could be harmless. In *Harrington* v. *California* (1969), 395 US 250 (89 S Ct 1726, 23 L Ed 2d 284), the Court stated its conclusion that the *Bruton* error in that case was harmless beyond a reasonable doubt. In this case also the *Bruton* error was harmless beyond a reasonable doubt.

When he was arrested, defendant Thomas told a police detective that on the day of the robbery he was at Truzella Grant's home at about 2 p.m., that he left the home about 3 p.m. and drove Mamie home. Mamie, a cousin of defendant Grant, testified that she met the defendants at the Grant home

---

*Stubbs* v. *State* (Fla App, 1969), 222 So 2d 228; *Garcia* v. *State* (Fla App, 1969), 226 So 2d 17.

[5] See *Jones* v. *United States* (1968), 392 US 299 (88 S Ct 2050, 20 L Ed 2d 1104); *Pickens* v. *Oliver* (1968), 392 US 300 (88 S Ct 2053, 20 L Ed 2d 1105); *Santoro* v. *United States* (1968), 392 US 301 (88 S Ct 2054, 20 L Ed 2d 1106); *Nelson* v. *United States* (1968), 392 US 303 (88 S Ct 2062, 20 L Ed 2d 1109); *Hunt* v. *Connecticut* (1968), 392 US 304 (88 S Ct 2063, 20 L Ed 2d 1110); *Serio* v. *United States* (1968), 392 US 305 (88 S Ct 2063, 20 L Ed 2d 1111); *Williams* v. *Florida* (1968), 392 US 306 (88 S Ct 2064, 20 L Ed 2d 1112); *Bujese* v. *United States* (1968), 392 US 297 (88 S Ct 2064, 20 L Ed 2d 1113); *Hillman* v. *Florida* (1968), 392 US 307 (88 S Ct 2065, 20 L Ed 2d 1114); *McCarty* v. *Kansas* (1968), 392 US 308 (88 S Ct 2065, 20 L Ed 2d 1115); *Schneble* v. *Florida* (1968), 392 US 298 (88 S Ct 2067, 20 L Ed 2d 1116); *Hopper* v. *Louisiana* (1968), 392 US 658 (88 S Ct 2281, 20 L Ed 2d 1347); *Bates* v. *Nelson* (1968), 393 US 16 (89 S Ct 50, 21 L Ed 2d 21), *reh den* 393 US 1008 (89 S Ct 490, 21 L Ed 2d 473); *Jones* v. *Florida* (1969), 394 US 720 (89 S Ct 1473, 22 L Ed 2d 675).

at 10:30 a.m. on that day. The defendants left about noon and returned at 1 p.m. Thereafter they remained at the Grant home continuously until 3:30 p.m., at which time they drove her home, a journey of 30 to 40 minutes. When he was arrested, defendant Grant gave the detective a written statement that he was with "George in the a.m. I was with George when we drove Mamie home."

Although the tendency of the Thomas statement was to place Grant with Thomas at the time of the robbery, 3 p.m., Grant said as much in the statement he gave the detective which was admitted in evidence at the trial without objection by Grant or attempt to modify or deny it. Manifestly, the Thomas statement was merely cumulative of Grant's much more specific statement which placed Grant with Thomas during the period of time the robbery was committed.

## III.

Following Grant's and Thomas' convictions, they filed a motion for a new trial on the ground that their alibi would be supported by the testimony of Norma Pelham, a proprietor of a funeral home. At a hearing on the motion Norma Pelham testified that Grant and Thomas drove in at 3 o'clock, the time of the robbery. There was testimony that the distance between the funeral home and the scene of the robbery was three or four miles.

Mrs. Pelham was present at the time of the trial but was not called by defendants' trial lawyers. In denying the motion for a new trial, the judge declared that he was of the opinion that defendants' trial lawyers investigated the facts and circumstances at the time and had some reason for not calling Mrs. Pelham as a witness. "We are pre-

cluded because of the attorney-client relationship from inquiring directly of counsel for the reason. * * * The court can only conclude that they had, as part of their trial strategy, good and sufficient reason for not calling this witness who was in court and was available."

A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim of ineffective assistance of counsel. To the extent that his claim of inadequacy depends on facts not of record, he must make a testimonial record at the trial level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately.[6]

If the defendants' trial lawyers investigated the case and had a good reason for not calling Mrs. Pelham as a witness, their failure to call her would not constitute ineffective assistance.

On the issue of whether the defendants' trial lawyers had a good reason, the trial judge was not precluded by the attorney-client relationship from asking them to explain their failure to call Mrs. Pelham as a witness. To rule that such inquiry is barred would be to shield inadequate representation and unduly impede the establishment of a meritorious claim of ineffective assistance. A client who attacks the adequacy of the representation he received at his trial waives the attorney-client privilege to the extent necessary to permit an inquiry concerning the adequacy of his representation.[7]

---

[6] See *People* v. *Jelks* (1971), 33 Mich App 425.

[7] "The plaintiffs waived the privilege when they charged their former attorney with incompetency and unpreparedness." *Everett* v. *Everett* (1947), 319 Mich 475, 484. Similarly, see *Leverich* v. *Leverich* (1954), 340 Mich 133, 137; 8 Wigmore, Evidence, § 2326, p 638, fn 4.

It would appear from the record presented that the defendants' trial lawyers did not call Mrs. Pelham because they preferred to build their defense around the testimony of Mamie who placed the defendants with her between 1 p.m. and 4:10 p.m., rather that on Mrs. Pelham's version that the defendants were with her at her funeral home at 3 p.m.

The record does not reveal any attempt by the defendants' appellate lawyers to question the defendants' trial lawyers. The judge's observations about the attorney-client privilege would appear to be unrelated to any effort to question the trial lawyers. In all events, the defendants have not established that the failure of the defendants' trial lawyers to call Mrs. Pelham constituted ineffective assistance of counsel.