*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

ANDREW THOMAS COWHY,

    Defendant-Appellee.

FOR PUBLICATION
November 19, 2019
9:10 a.m.

No. 348542
St. Clair Circuit Court
LC No. 2015-002000-FC

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

M. J. KELLY, P.J.

    In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court order (1) denying the prosecution's motion to admit into evidence a redacted affidavit from defendant, Andrew Cowhy, and (2) granting Cowhy's motion in limine to exclude certain testimony and documents from Cowhy's former defense lawyer, William P. Hackett, and from Leo Niffeler, a licensed social worker who evaluated Cowhy at Hackett's request and authored a report for use at sentencing. We conclude that the trial court abused its discretion by excluding the testimony from Niffeler, the testimony from Hackett, and Cowhy's affidavit under MRE 410. However, the statements made by Cowhy to Hackett are protected by attorney-client privilege and are therefore inadmissible. Similarly, statements made by Cowhy to Niffeler are protected by the psychologist-patient privilege—which applies to social workers—and are also inadmissible. Accordingly, we affirm the trial court's order excluding testimony and documentary evidence from Hackett and Niffeler. But because Cowhy's redacted affidavit is relevant and is not inadmissible under MRE 410, we reverse the court's order to the extent that it excluded the affidavit from evidence.

---

[1] *People v Cowhy*, unpublished order of the Court of Appeals, entered June 19, 2019 (Docket No. 348542).

## I. BASIC FACTS

In August 2015, Cowhy was charged with three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), six counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), and one count of accosting a child for immoral purposes, MCL 750.145a. The charges against Cowhy were based upon allegations that, between 2002 and 2011, Cowhy had sexually abused his niece, nephew, and three of his cousins. In October 2015, pursuant to a plea agreement where the prosecution dismissed the CSC-I charges, Cowhy pleaded guilty to six counts of CSC-II, three counts of CSC-III, three counts of first-degree child abuse, and one count of accosting a child for immoral purposes.

Before sentencing, the prosecution and the defense stipulated that at the defense's request Cowhy would submit to "a risk assessment/evaluation . . . for the purposes of sentencing."[2] Thereafter, Cowhy met with Niffeler and admitted to sexually abusing each of the children named in the information. A copy of Niffeler's report was submitted to the court before sentencing, along with numerous support letters from Cowhy's friends and family. In his statement to the court, Cowhy accepted responsibility for his crimes and the pain that they caused, and he stated that he intended to seek treatment. The trial court sentenced him to 10 to 15 years' imprisonment for the CSC-III convictions, 225 to 360 months' imprisonment for the first-degree child abuse convictions, and two to four years' imprisonment for the accosting a child for immoral purposes conviction.

Hackett represented Cowhy from August 2015 through sentencing in November 2015.

In February 2016, Cowhy moved to withdraw his guilty plea, arguing that his plea was defective because (1) he was a juvenile when he sexually abused the children, (2) there was no factual basis for his plea to the CSC-II and first-degree child abuse charges, and (3) he was misinformed of the maximum possible sentence for his first-degree child abuse convictions, which resulted in a violation of the Ex Post Facto clauses of the federal and state constitutions. In connection with the motion to withdraw his plea, Cowhy submitted a signed and notarized affidavit that included the following statements:

> 1. That all of the sexual incidents he pled guilty [to] occurred when he was between the ages of 13 and 15, or possibly right after he turned 16.

> 2. That one reason why he remembers his age at the time of the offenses he [sic] because he is sure that they all occurred before he had his driver's license which he got at age 16.

The court denied the motion to withdraw the plea.

---

[2] We note that Cowhy was not required by law to submit to the risk assessment for purposes of sentencing. His decision to do so was voluntary.

Cowhy filed a delayed application for leave to appeal to this Court, which was denied.[3] Thereafter, he appealed the denial of his delayed application for leave to appeal to the Michigan Supreme Court, which remanded to this Court for consideration as on leave granted. *People v Cowhy*, 500 Mich at 1008 (2017).

Relevant to this appeal, while his case was pending before this Court, Cowhy filed a legal-malpractice suit against Hackett. In his answer to the malpractice complaint, Hackett asserted that Cowhy "admitted the truth of the allegations made against him" to Hackett and that Cowhy admitted he "had sexually molested all five of the child[ren] consistent with the victims' versions of the incident." Additionally, Hackett stated that Cowhy admitted to him "that the molestation of Cowhy's minor family members continued until shortly after Cowhy's twentieth birthday." Hackett also stated that Cowhy had purposefully waived his preliminary examination because he "was very adamant he did not want to hear the children testify about the sexual assaults that he committed against them and he did not want his father to testify against him concerning the admissions [he] made to his father." In February 2018, the malpractice action was stayed until the conclusion of Cowhy's criminal appeal.

Subsequently, this Court determined that Cowhy's plea was defective because his sentence for first-degree child abuse violated the Ex Post Facto clauses of the federal and state constitutions and Cowhy had not waived the violation. *People v Cowhy*, unpublished per curiam opinion of the Court of Appeals, issued July 31, 2018 (Docket No. 334140); unpub op at 7. Accordingly, this Court vacated the order denying Cowhy's motion to withdraw his plea and remanded to allow him an opportunity to withdraw his plea.[4]

In November 2018, the legal-malpractice action against Hackett was dismissed by stipulation.

In the meantime, on remand from this Court, Cowhy withdrew his plea. Following a preliminary examination, the case was bound over to the circuit court. Before trial, the prosecution filed a motion to admit statements from a redacted version of an affidavit that Cowhy submitted to the trial court in support of his motion to withdraw his guilty plea.[5] Additionally, Cowhy filed a motion to exclude testimony from Hackett and a motion to exclude

---

[3] *People v Cowhy*, unpublished order of the Court of Appeals, entered September 22, 2016 (Docket No. 334140).

[4] *People v Cowhy*, unpublished per curiam opinion of the Court of Appeals, issued July 31, 2018 (Docket No. 334140); unpub op at 7.

[5] The redacted version of the affidavit eliminates Cowhy's reference to pleading guilty to sexually abusing five of his relatives. Although the prosecution argued before the trial court that it could introduce the plea transcript because Cowhy had waived MRE 410 by voluntarily referencing his plea in his affidavit, it has not revived that position on appeal so we will not address it further.

testimony from Niffeler. He argued that pursuant to MRE 410, any testimony and evidence from Hackett and Niffeler would be inadmissible. Additionally, he contended that his statements to Hackett were protected by attorney-client privilege and his statements to Niffeler were protected by psychologist-patient privilege. The trial court found that MRE 410 precluded the admission of all of the evidence at issue and entered an order excluding Cowhy's affidavit, Hackett's testimony, and Niffeler's testimony.

This interlocutory appeal follows.

## II. ADMISSIBILITY OF EVIDENCE

### A. STANDARD OF REVIEW

The prosecution argues that the trial court abused its discretion by excluding Cowhy's affidavit, Hackett's testimony, and Niffeler's testimony. This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). Whether a confidential communication is privileged is reviewed de novo. *Krug v Ingham Co Sheriff's Office*, 264 Mich App 475, 484; 691 NW2d 50 (2004).

### B. ANALYSIS

#### 1. MRE 410

The trial court held that the challenged statements were barred by MRE 410, reasoning that the purpose of this Court's remand permitting Cowhy to withdraw his plea was "meant to put him back in the position he was before he entered the plea." The court noted that the challenged evidence came out after Cowhy's plea, that each of the statements flowed "from the plea that he has been allowed to withdraw," and "none of these things would have happened but for the plea being withdrawn." In doing so, the court failed to properly apply MRE 410.

As with statutory interpretation, this Court applies the plain and unambiguous language of a court rule. *People v Hawkins*, 468 Mich 488, 500; 668 NW2d 602 (2003). "[J]ust as we cannot read into an unambiguous statute a provision not written by the Legislature, we likewise cannot read into a court rule a provision not written by the Supreme Court." *Orr*, 275 Mich App at 595. MRE 410 provides:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> (1) A plea of guilty which was later withdrawn;
>
> (2) A plea of nolo contendere, except that, to the extent that evidence of a guilty plea would be admissible, evidence of a plea of nolo contendere to a

criminal charge may be admitted in a civil proceeding to support a defense against a claim asserted by the person who entered the plea;

       (3) Any statement made in the course of any proceedings under MCR 6.302 or comparable state or federal procedure regarding either of the foregoing pleas; or

       (4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

       However, such a statement is admissible (*i*) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (*ii*) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

At this time, the prosecution is not attempting to introduce evidence of a guilty plea that was later withdrawn, a plea of nolo contendere, or a statement made in the course of a proceeding under MCR 6.302 or a comparable state of federal procedure.[6] Accordingly, none of the challenged statements are barred under MRE 410(1), (2), or (3).

Whether a statement was made in the course of plea discussions for purposes of MRE 410(4) involves application of a two-pronged test adopted in *People v Dunn*, 446 Mich 409, 415; 521 NW2d 255 (1994). "In *Dunn*, our Supreme Court held that MRE 410 applies when (1) the defendant has an actual subjective expectation to negotiate a plea at the time of the discussion, and (2) that expectation is reasonable given the totality of the objective circumstances." *People v Smart*, 304 Mich App 244, 249; 850 NW2d 579 (2014) (quotation marks and citation omitted). The phrase " '[i]n the course of' means 'in the process of, during the progress of.' " *Id*. at 252, quoting I *Oxford English Dictionary* (compact ed., 1971), p 1088. In addition, although MRE 410(4) provides that the statements are only inadmissible if made "in the course of plea discussions with an attorney for the prosecuting authority . . .," this Court has held that "[i]t is conceivable that a defendant may speak to persons other than an attorney for the prosecuting authority in the course of the plea discussions." *Smart*, 304 Mich App at 252. Under such circumstances, it is helpful to examine whether the discussions with other persons occurred at the direction of a lawyer for the prosecuting authority. *Id*.

---

[6] We note that in the proceedings before the trial court, the prosecution sought to admit a copy of Cowhy's plea transcript. On appeal, the prosecution does not directly argue that the trial court abused its discretion in excluding the plea transcript. To the extent that the prosecution makes an indirect argument for the admission of the plea transcript, we conclude that it is plainly inadmissible under MRE 410(1) and MRE 410(3).

In *Dunn*, the defendant contacted the police after being arrested in order to "work out a plea bargain." *Dunn*, 446 Mich at 413. The police, however, told him that until they knew "what information he had," they could not talk to the prosecutor with regard to a plea bargain. *Id*. The defendant cooperated with the police and made a number of inculpatory statements; however, he was unable to work out a plea bargain with the prosecution so he proceeded to trial. *Id*. at 413-414. Our Supreme Court concluded that at the time the defendant made the inculpatory statements, he had a subjective expectation to negotiate a plea and that his "expectation was reasonable given the totality of the objective circumstances." *Id*. at 415-416. Accordingly, the Court held that the statement was barred by MRE 410. *Id*. at 414-415.

In *Smart*, the defendant wanted to obtain a favorable plea bargain for charges in another case. *Smart*, 304 Mich App at 247. In pursuit of that goal, he met with several law enforcement officers on March 15, 2011 and made some inculpatory statements (to the surprise of his lawyer). *Id*. at 248. Thereafter, he entered into a written plea agreement. *Id*. The defendant, however, chose to contact law enforcement again to determine if he reached the best possible plea agreement. *Id*. The defendant's lawyer asked the police detective to tell the defendant that his agreement would not improve, the prosecutor's office urged the officer to nevertheless meet with the defendant to obtain additional information. *Id*. On June 8, 2011, the defendant again met with law enforcement and, after being told that the deal would not improve, he made additional inculpatory statements. *Id*. at 248. This Court noted that under the circumstances the defendant initiated the June 8, 2011 meeting in order to obtain a more favorable plea. *Id*. at 254-255. At the prosecution's directive, the meeting was held despite the prosecution's position that it would not offer a more favorable plea. *Id*. at 255. This Court held that given that the meeting was held "with the knowledge that [the] defendant requested and would appear at the meeting in an attempt to negotiate a better plea deal," the detective gave the defendant a reasonable belief that the requested plea negotiations would occur. *Id*. at 255. This Court also reasoned that, although the defendant was told that he would not receive a more favorable agreement, he was also advised that the prosecution—who was responsible for offering a better plea agreement—would be "very interested" in the information the defendant could provide. *Id*. As a result, the detective bolstered, rather than diminished, the defendant's belief that he could obtain a more favorable plea agreement. *Id*. This Court acknowledged that the plea agreement was being "tweaked" even after the June 8, 2011 meeting, and concluded that under the totality of the circumstances, the defendant's belief that he was negotiating a plea was reasonable. *Id*. at 256-257.

Relevant to this appeal, the prosecution challenges the trial court's decision to exclude testimony and documentary evidence from Niffeler, Cowhy's redacted affidavit, and testimony from Hackett. We address each in turn.

First, at the time that Cowhy made inculpatory statements to Niffeler, he did not have a subjective expectation to negotiate a plea, and even if he did, his expectation was not reasonable under the totality of the circumstances. When Cowhy spoke to Niffeler, the plea agreement had already been entered and he had pleaded guilty pursuant to it. See also *United States v Marks*, 209 F3d 577, 582 (CA 6, 2000) (quotation marks and citation omitted) ("[S]tatements made after a plea agreement is finalized are not made in the course of plea discussions."). Indeed, prior to making the statements, Cowhy and the prosecution entered into a stipulated agreement stating Niffeler would conduct "a risk assessment/evaluation" of Cowhy at the jail "for the purposes of

-6-

sentencing." Niffeler's report was subsequently submitted to the court prior to sentencing and it focused on sentencing issues, i.e., Cowhy's rehabilitative potential. Cowhy used the report at sentencing as part of his argument in favor of a more lenient sentence. Therefore, unlike the defendants' in *Dunn* and *Smart*, Cowhy's expectation at the time he made the statements was to receive a more lenient sentence, not to receive a better plea agreement with the prosecution. The trial court abused its discretion by excluding the statements to Niffeler under MRE 410.

Similarly, Cowhy did not expect to negotiate a plea with a lawyer for the prosecuting authority when he submitted his affidavit in support of *withdrawing* his guilty plea. His expectation when he made the inculpatory statements in the affidavit was to have his plea withdrawn. Furthermore, even if Cowhy had a subjective expectation to negotiate a better plea *after* withdrawing his original plea, there is nothing on the record indicating that such a belief was reasonable given the totality of the objective circumstances. Moreover, unlike the defendants' in *Dunn* and *Smart*, Cowhy was not leveraging his inculpatory statements against a more favorable plea agreement with the prosecution. He was not, in fact, engaged in *any* discussions with a lawyer for the prosecuting authority when he made the statements or anyone acting at the direction of the prosecuting authority. See MRE 410(4) (barring statements "made in the course of plea discussions *with an attorney for the prosecuting authority . . .*") (emphasis added); *Smart*, 304 Mich App at 252. Accordingly, the trial court abused its discretion by excluding the statements in the affidavit under MRE 410.

Finally, the trial court abused its discretion by excluding statements Cowhy made to Hackett under MRE 410. Based on the information before this Court, it is apparent that the statements were made by Cowhy to Hackett before Cowhy entered into a plea agreement with the prosecution because they were used to inform Hackett's advice to Cowhy regarding the plea. Therefore, the statements were not made in the course of plea negotiations with a lawyer for the prosecuting authority or at the direction of a lawyer for the prosecuting authority. See *Smart*, 304 Mich App at 252. And, although the information may have been used by Hackett to advise Cowhy regarding his legal options, there is nothing in the record to suggest that when Cowhy made the statements he had a subjective expectation to negotiate a plea with the prosecuting authority or that such an expectation would be reasonable under the totality of the circumstances. Accordingly, on this record, we conclude that the statements between Cowhy and Hackett were not protected by MRE 410.

## 2. RELEVANCY

In the alternative, Cowhy asserts that his statements in his redacted affidavit should be excluded because they are not relevant and would be unfairly prejudicial. Cowhy's affidavit only includes admissions that he sexually abused his relatives while he was a juvenile. That evidence is relevant because it has a tendency to make a fact of consequence—Cowhy's guilt and the children's credibility—more probable that it would be without the evidence. See MRE 401.[7] Furthermore, although evidence that is unfairly prejudicial may be excluded under MRE

---

[7] Even if the statements in the affidavit only related to crimes that Cowhy allegedly committed as a juvenile, such evidence would be admissible under MCL 768.27a. MCL 768.27a provides for

403, *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005), to be considered "unfairly prejudicial," evidence must be more than merely damaging to a defendant's case, *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002). "Unfair prejudice may exist where there is a tendency that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Id*. Unfairly prejudicial evidence will generally elicit "the jury's bias, sympathy, anger, or shock." *McGhee*, 268 Mich App at 614 (quotation marks and citations omitted). Here, the evidence contained in the affidavit, while damaging to Cowhy's case, is not unfairly prejudicial; rather, without going beyond the merits of the charges against Cowhy, it bears directly on his guilt and on the credibility of the children. Therefore, Cowhy cannot show that the evidence should be excluded under MRE 403.

### 3. PSYCHOLOGIST-PATIENT PRIVILEGE

Cowhy argues that, regardless of whether MRE 410 prohibits the admission of Niffeler's testimony, any testimony from Niffeler regarding the risk assessment evaluation of Cowhy must be considered confidential in accordance with the psychologist-patient privilege.[8]

Communications made to a psychologist or other mental health professional are privileged, and are generally not discoverable in criminal cases. *People v Carrier*, 309 Mich App 92, 106; 867 NW2d 463 (2015). A privileged communication is defined as any "communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to another person while the other person is participating in the examination, diagnosis, or treatment or a communication made privileged under other applicable state or federal law." MCL 330.1700(h). Under MCL 330.1750(1), "[p]rivileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege, except in the circumstances set forth in this section." Under MCL 330.1750(2), the particular circumstances under which a privileged communication may be disclosed include:

> (a) If the privileged communication is relevant to a physical or mental condition of the patient that the patient has introduced as an element of the patient's claim or defense in a civil or administrative case or proceeding or that,

---

the admission of evidence of other acts of sexual abuse committed against minors for " 'any matter to which it is relevant,' " including for propensity purposes. *People v Watkins*, 491 Mich 450, 487-489; 818 NW2d 296 (2012), quoting MCL 768.27a.

[8] Niffeler is a social worker. The psychologist-patient privilege also extends to social workers. See *People v Carrier*, 309 Mich App 92, 110; 867 NW2d 463 (2015). Indeed, "[t]he reasons for recognizing a privilege for treatment by psychiatrists and psychologists apply with equal force to treatment by a clinical social worker . . . ." *Id*. (quotation marks and citation omitted). Thus, the psychologist-patient privilege applies in this case, notwithstanding that Niffeler is a social worker, not a psychologist.

-8-

after the death of the patient, has been introduced as an element of the patient's claim or defense by a party to a civil or administrative case or proceeding.

(b) If the privileged communication is relevant to a matter under consideration in a proceeding governed by this act, but only if the patient was informed that any communications could be used in the proceeding.

(c) If the privileged communication is relevant to a matter under consideration in a proceeding to determine the legal competence of the patient or the patient's need for a guardian but only if the patient was informed that any communications made could be used in such a proceeding.

(d) In a civil action by or on behalf of the patient or a criminal action arising from the treatment of the patient against the mental health professional for malpractice.

(e) If the privileged communication was made during an examination ordered by a court, prior to which the patient was informed that a communication made would not be privileged, but only with respect to the particular purpose for which the examination was ordered.

(f) If the privileged communication was made during treatment that the patient was ordered to undergo to render the patient competent to stand trial on a criminal charge, but only with respect to issues to be determined in proceedings concerned with the competence of the patient to stand trial.

The proceedings in this case are criminal and do not pertain to Cowhy's mental conditions or competency to stand trial. See MCL 330.1750(2)(a), (c), (d), and (f). Therefore, the only provisions which may apply to the risk assessment evaluation include MCL 330.1750(2)(b) or MCL 330.1750(2)(e). We address each in turn.

With regard to MCL 330.1750(2)(b), there may be information relevant to the prosecution's case-in-chief contained in the evaluation, including evidence of Cowhy's guilt. This evidence could ostensibly be elicited by the prosecution via Niffeler's testimony. However, MCL 330.1750(2)(b) applies "only if the patient was informed that any communications could be used in the proceeding." Although Cowhy would have been informed that the communications could be used in the sentencing memorandum, or discussed during sentencing, there is no evidence that he was aware that the contents of his risk assessment evaluation would be subject to disclosure if he were permitted to withdraw his plea and proceeded to trial. Accordingly, MCL 330.1750(2)(b) does not allow for the admission of Niffeler's testimony regarding Cowhy's risk assessment evaluation at trial.

Similarly, with regard to MCL 330.1750(2)(e), the risk assessment evaluation was agreed to by the parties and ordered by the trial court, but MCL 330.1750(2)(e) contains a provision stating that disclosure is warranted if "the patient was informed that a communication made would not be privileged, but only with respect to the particular purpose for which the examination was ordered." Accordingly, although the communications between Cowhy and Niffeler were not privileged with regard to the sentencing hearing, they are otherwise protected

by the psychologist-patient privilege as there is nothing in the record suggesting that Cowhy was informed that his statements to Niffeler could be used in a later proceeding. The communications between Cowhy and Niffeler could only be disclosed to the trial court for sentencing purposes in accordance with MCL 330.1750(2)(e), and must otherwise remain protected by the psychologist-patient privilege.

The psychologist-patient privilege may be expressly waived by a party, or may be impliedly waived if the party "placed [his or her] mental state in controversy." Yet, there is no evidence in the record that Cowhy expressly waived the psychologist-patient privilege for anything other than sentencing. Further, the prosecution presented no evidence that by allowing the trial court to view the risk assessment examination report Cowhy intended to expressly waive the psychologist-patient privilege for any and all additional purposes. Additionally, although a risk assessment evaluation was completed, Cowhy has not placed his mental state in controversy by claiming an insanity defense or otherwise calling his mental state into question. See *People v Toma*, 462 Mich 281, 319; 613 NW2d 694 (2000) (holding that "[b]y raising an insanity defense, the defendant has placed his mental state at issue and waived the [psychologist-patient] privilege in that regard."). Accordingly, on this record, Cowhy did not waive the psychologist-patient privilege with regard to the risk assessment evaluation performed by Niffeler.

As the prosecution correctly notes, the trial court did not address the psychologist-patient privilege at the hearing regarding defendant's motion to exclude Niffeler's testimony, and only excluded the testimony by finding that it was inadmissible under MRE 410. Testimony from Niffeler would not be precluded at trial by MRE 410, but is precluded because of the operation of the psychologist-patient privilege. See *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003) (stating that this Court will generally "not reverse a trial court's order if it reached the right result for the wrong reason.").

### 4. ATTORNEY-CLIENT PRIVILEGE

Finally, Cowhy argues that, even if not protected by MRE 410, his statements to Hackett are inadmissible because they are protected by attorney-client privilege. In response, the prosecution contends that Cowhy waived attorney-client privilege by filing a legal-malpractice complaint against Hackett. The prosecution cites to two cases in support of the argument that defendant waived his attorney-client privilege. First, in *Everett v Everett*, 319 Mich 475, 483; 29 NW2d 919 (1947) (quotation marks and citation omitted), the Michigan Supreme Court opined that a party may waive his or her attorney-client privilege by making a claim of "fraud or other improper or unprofessional conduct" against his or her lawyer. Second, in *People v Houston*, 448 Mich 312, 332; 532 NW2d 508 (1995), the Michigan Supreme Court held that a defendant waives his attorney-client privilege by asserting a claim of ineffective assistance of counsel against his lawyer.

The prosecution asserts that *Everett* supports the argument that Cowhy completely waived his attorney-client privilege by filing a civil legal-malpractice lawsuit against Hackett. *Everett*, however, is not dispositive. In *Everett*, our Supreme Court stated that an affidavit from the plaintiffs' former lawyer was "admissible under the circumstances to refute the charge," indicating that the attorney-client privilege was waived only for the purpose of determining whether the plaintiffs' lawyer acted competently. *Id*. at 484. Yet, as explained by this Court in

*People v Thomas*, 33 Mich App 664, 676; 190 NW2d 250 (1971), "[a] client who attacks the adequacy of the representation he received at his trial waives the attorney-client privilege *to the extent necessary to permit an inquiry concerning the adequacy of his representation*." (Emphasis added). Accordingly, although Cowhy waived his attorney-client privilege in the civil legal-malpractice lawsuit, he only did so to the extent necessary for the trial court *in the legal-malpractice lawsuit* to determine whether Hackett adequately represented him.[9]

Similarly, although Cowhy argued in his first appeal to this Court that Hackett provided ineffective assistance, his claim only waived attorney-client privilege as it related to the claim of ineffective assistance and the prosecution's reliance on *Houston*, 448 Mich at 312, is misplaced. In *Houston*, the defendant asserted at sentencing that his lawyer provided ineffective assistance, and in response the trial court directed the defendant's lawyer to answer questions regarding the assistance he provided to the defendant. *Id.* at 316, 330. Our Supreme Court held that a defendant could not simultaneously assert that his lawyer was ineffective and use attorney-client privilege to prevent his lawyer from rebutting the allegations. *Id.* at 333. In contrast, in this case, the allegations that Hackett provided ineffective assistance to Cowhy have been resolved and Hackett's testimony is no longer required to rebut Cowhy's assertion that he was ineffective in this case. Again, the waiver of privilege in the context of a claim against a defendant's lawyer, does not amount to a waiver for all time and all purposes. It relates only to the specific claim of malpractice or ineffectiveness. Consequently, although Cowhy's waived his attorney-client privilege in relation to his earlier appeal from the trial court's order denying his motion to withdraw his guilty plea, he has not waived his attorney-client privilege in the current proceedings, which are unrelated to the claim of ineffective assistance.

In sum, although Hackett's statements are not precluded by MRE 410, they are inadmissible because they are protected by attorney-client privilege. See *McLaughlin*, 258 Mich App at 652 n 7.

### III. CONCLUSION

The trial court abused its discretion by excluding all of the statements challenged on appeal under MRE 410. Cowhy's statements in his affidavit are, therefore, admissible. His statements to Niffeler, however, are protected by psychologist-patient privilege, and his statements to Hackett are protected by attorney-client privilege. Accordingly, we affirm the exclusion of the statements to Niffeler and Hackett, but reverse the exclusion of the statements in Cowhy's affidavit.

---

[9] Because Cowhy only waived attorney-client privilege in the legal-malpractice proceedings, the prosecution's argument that Cowhy is attempting to re-assert privilege after waiving it is without merit. Cowhy did not waive attorney-client privilege in the pending criminal case.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle