## EVERETT *v.* EVERETT.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—DISPOSITION OF PROPERTY BY DECEDENT.

   The statute barring testimony, upon objection, as to matters equally within knowledge of a deceased person applies to controversies arising out of the disposition of property by a decedent (3 Comp. Laws 1929, § 14219).

2. EQUITY—REHEARING—TITLE—NEGLIGENCE OF ATTORNEY.

   A rehearing of a chancery matter involving title to real and personal property may not be granted upon the sole ground of the incompetence of a party's counsel to try the case as the law attributes the neglect or incompetence of the counsel to the party.

3. WITNESSES—ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS—FRAUD—WAIVER.

   The rule that communications between an attorney and client are privileged ceases and the attorney is no longer bound by

his obligation of secrecy when his client, or his representatives, charge the attorney, either directly or indirectly, with fraud or other improper or unprofessional conduct.

4. SAME—PRIVILEGED COMMUNICATIONS TO ATTORNEY—WAIVER—AF-FIDAVIT.

Plaintiffs waived the privilege of communications to their attorney when they charged him with incompetency and unpreparedness and the attorney's affidavit was admissible to refute the charge.

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 9, 1947. (Docket No. 40, Calendar No. 43,832.) Decided December 3, 1947.

Bill by George Everett and others against Mathew L. Everett and wife to set aside a deed and property agreement. Decree for defendants. Plaintiffs appeal. Affirmed.

*Walter M. Nelson,* for plaintiffs.

*Voorhies, Long, Ryan & McNair* (*R. Gerveys Grylls,* of counsel), for defendants.

BUTZEL, J. On April 30, 1942, Ed. Everett, a widower, at the age of 87, for the stated purpose of dividing his property among his children and for assuring to himself a home and support for the rest of his life, entered into a written contract with his son and daughter-in-law, Mathew L. and Ruth I. Everett, defendants herein, whereunder, in consideration of their promises to support and maintain him for the remainder of his life and to pay his burial expenses, he conveyed to them his farm and all his personal property thereon. One of the considerations for the conveyance of the farm and for the contract was the deposit by Mathew L. and Ruth I. Everett of the sum of $3,000 to the credit

of George Everett, Frank Everett, and Genevieve Wilson in joint bank money orders. The latter are the other sons and daughter of the said Ed. Everett and are the plaintiffs herein.

Defendants Mathew L. and Ruth I. Everett had come to live with the old gentleman on his farm several years prior to the date of the agreement, and continued to reside with him during the four years he lived after the execution of the agreement.

Shortly after the death of Ed. Everett in May, 1946, plaintiffs filed a bill of complaint seeking to have the agreement, deed and transfer of the personal property set aside on the ground that decedent was mentally incompetent at the time of the execution of the agreement and incapable of understanding the nature of the transactions he had entered into, and further that defendants were guilty of fraud, undue influence and coercion.

Defendants filed an answer in which they denied that defendant was mentally incompetent or incapacitated at the time the agreement was made, but on the contrary they asserted that he had obtained an attorney of his own selection to prepare the agreement, deed, and bill of sale in the absence of defendants. Defendants also denied the charges of fraud, undue influence and coercion. Other defenses claimed are not material to the question presented on this appeal.

At the pretrial hearing, the issues were narrowed to those of fraud, undue influence and mental incompetency. At the hearing proper, plaintiffs were represented by the same counsel who had prepared their bill of complaint, and defendants were ably represented by their present counsel. Plaintiffs' counsel immediately asked leave to amend the bill of complaint so as to include an allegation that defendants had not lived up to and fulfilled their

promises under the agreement to provide proper care, medical attention, and food to the deceased. Leave was granted, the amendment was filed, and defendant promptly answered denying the new allegation.

Upon proceeding to put in their proofs, plaintiffs at once ran into difficulty. In the direct examination of one of the plaintiffs, the first witness, defendants' counsel, by objection, invoked the so-called "dead man's statute," 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914), to bar testimony of the witness as to matters equally within the knowledge of the deceased. The objection was sustained after argument in which defendants' counsel cited *Luce* v. *Luce,* 197 Mich. 465, a case which in some respects resembles the instant case, as authority for his position. Similar objection was made to the testimony of other plaintiffs.

There can be no doubt but that the statute applies to controversies, such as this one, arising out of the disposition of property by a decedent (*Luce* v. *Luce,* supra; *Shepard* v. *Shepard,* 164 Mich. 183; *Loomis* v. *Loomis,* 178 Mich. 221; *Beadle* v. *Anderson,* 158 Mich. 483), and that if plaintiffs were unable to produce witnesses other than themselves to substantiate their claims, they probably would not be able to prove their allegations.

In the course of the trial, plaintiffs' counsel attempted to show the terms of the agreement and deed in controversy, without introducing the originals. Defendants' counsel objected on the ground that the originals were the best evidence and should be produced. The objection was sustained, and plaintiffs' counsel, who did not have possession of the originals, stated he would endeavor to produce them the next day.

Thus, plaintiffs were unable to make any headway whatsoever on the first day of the trial. After it had been in progress less than an hour, it was necessary to continue the case to the next day. Defendants objected to the continuance, but the judge granted it, stating he thought it would be unreasonable to cut plaintiffs off without an opportunity to produce other witnesses.

The following day, at the opening of court, plaintiffs' attorney stated on the record that his clients would consent to a decree dismissing the case with prejudice and costs. A written stipulation was entered into to that effect and decree was entered.

Twelve days later, plaintiffs' present counsel, Walter M. Nelson, entered his appearance on their behalf. He contemporaneously filed a motion for a new trial for the following reasons: that the former proceedings did not amount to a trial; that the merits of the controversy were not put in evidence, tried or heard; that the disparity in the ability of the counsel for the respective parties was so great that the hearing did not amount to a trial of the issues of law and fact; that documents relative to the transaction were not placed or received in evidence; that witnesses having knowledge of the facts were not sworn or heard; that plaintiffs' former counsel was wholly incompetent and unprepared to try the case; that the incapacity and unpreparedness of plaintiffs' former counsel was so complete as to deprive plaintiffs of a proper hearing; that plaintiffs were deprived of a trial of their rights through no fault of their own, as they were not experienced in matters of litigation; and that injustice would result unless a rehearing was granted, all without intent on the part of opposing counsel or apparent error on the part of the trial court.

Plaintiffs' former attorney thereupon filed an affidavit in opposition to the attack made on him in the motion for new trial. In the affidavit he stated that at no time had there been any consent on his part to a substitution of attorneys; that in preparation for the trial he had interviewed every person suggested by plaintiffs as possible witnesses, and also other persons; that none of them could testify to any facts supporting the bill of complaint; that prior to the trial he advised plaintiffs they could not succeed unless they could produce other witnesses than themselves or could obtain a waiver of the rule which barred plaintiffs from testifying as to matters equally within the knowledge of the deceased. He further stated that when, after the first day of the hearing, it appeared that defendants would not waive the rule, he advised plaintiffs it was useless to proceed, and that it would be best to dismiss the case before other expenses were incurred; that a meeting was arranged at his office for decision of whether the case should be dismissed or not; that Frank Everett, one of the plaintiffs, advised deponent that owing to weather conditions the plaintiffs would not keep the appointment, but that it was agreed by them that the case should be dismissed; that deponent attempted to obtain consent of defendants' counsel to dismissal without prejudice, but counsel refused, and, thereupon, he proceeded to consent to dismissal with prejudice; and that he did obtain a concession from defendants' counsel in the matter of costs.

Plaintiffs' motion for a new trial dragged on for several months, and during the interval, affidavits in support of plaintiffs' claims were filed by parties who had not testified at the hearing, and who were not precluded from testifying by the "dead man's statute." However, one of these parties is a son

of one of the plaintiffs, and another, Orrin H. Everett, is a nephew of the decedent, his exact relationship to the parties in the law suit not being shown.

One of the plaintiffs, Frank Everett, filed an affidavit five months after the trial in which he stated that shortly after the death of decedent, defendants Mathew L. and Ruth I. Everett came to his home, and that Ruth I. Everett, in the presence of her husband, admitted that at the time decedent signed the agreement on April 30, 1942, his "mind was just like a little child," and that defendant Mathew L. Everett did not correct the statement or reprove his wife for making it and by his silence, clearly indicated his approval. Frank Everett was a witness at the hearing and he, as well as the other plaintiffs, was permitted to testify that there had been a meeting at his home on May 23, 1946, attended by plaintiffs and defendants. There was no objection to testimony as to what took place at this meeting. It seems very strange that when this deponent was sworn on the first day of the hearing and was asked what took place at the meeting, he did not even mention the alleged statement by defendant Ruth I. Everett. The trial judge evidently did not give much credence to this affidavit. It certainly does not contain after-acquired knowledge, nor was the failure to disclose the alleged facts therein the fault of plaintiffs' attorney, as Frank Everett was given full opportunity to testify about the interview between the parties.

The judge entered an order denying the motion for a rehearing, and this appeal is prosecuted from that order.

The main question on appeal, as stated by counsel for plaintiffs, is

"Should a new trial of a chancery matter involving title to real and personal property be granted

upon the sole ground of the incompetence of plaintiffs' counsel to try the case?"

The answer is unequivocally "No."

A new trial because of incompetence of counsel has seldom been granted except occasionally in criminal cases. See note, 45 Michigan Law Review, p. 1049. The general rule is that in civil cases incompetence of counsel is not a sufficient reason for granting a new trial. The law is stated in 39 Am. Jur. p. 159, New Trial, § 152, as follows:

"In civil cases the rule is practically universal that a new trial will not be granted on the ground of the negligence or incompetence of the attorney for the party applying for such new trial. The law regards the neglect of an attorney as the client's own neglect and will give no relief from the consequences thereof."

The question has frequently arisen in other jurisdictions. We cite but a few cases supporting the rule: *Edgington* v. *Taylor* (C. C. A.), 270 Fed. 48; *Albert Hass Lumber Co.* v. *Gibson,* 172 Ala. 111 (54 South. 994, Ann. Cas. 1913 D, 497); *Palverari* v. *Finta,* 129 Conn. 38 (26 Atl. [2d] 229); *Staunton Coal Co.* v. *Menk,* 197 Ill. 369 (64 N. E. 278); *Jones* v. *Leech,* 46 Iowa, 186; *State* v. *Dangelo,* 182 Iowa, 1253 (166 N. W. 587); *Holderman* v. *Jones,* 52 Kan. 743 (34 Pac. 352); *Sayre* v. *Commonwealth,* 194 Ky. 338 (238 S. W. 737, 24 A. L. R. 1017); *Central Motors & Supply Co., Inc.,* v. *Brown,* 219 Minn. 417 (18 N. W. [2d] 236); *O'Quinn* v. *Tate* (Tex. Civ. App.), 187 S. W. (2d) 241; *Farmers Loan & Trust Co.* v. *Walworth County Bank,* 23 Wis. 249.

The reason for the rule is aptly stated in *Jones* v. *Leech, supra,* as follows:

"The law regards the neglect of an attorney as the client's own neglect and will give no relief from the consequences thereof. Were courts authorized

to disturb judgments because of the neglect and unskillfulness of attorneys appearing in the cases, the character of these adjudications of the courts for stability would be wonderfully impaired. It would frequently occur that a judgment would not be regarded as settling the rights of the parties, until the court had, in a proceeding of this character, passed upon the skill and diligence of the counsel. This would not result so often from actual negligence or want of skill of attorneys, as from the disposition of litigants to avail themselves of every possible avenue of escape from the consequences of defeat.''

The appellants further contend that the affidavit of plaintiffs' former attorney should have been excluded from the record on the ground that privileged communications between attorney and client were disclosed therein.

The rule is stated in the American Law Institute Model Code of Evidence as follows:

''Rule 213  *  *  *  (2) There is no privilege under Rule 210 as to any relevant communication between a lawyer and his client  *  *  *  (b) upon an issue of breach of duty by the lawyer to his client.''

5 Jones' Commentaries on Evidence (2d Ed.), § 2165, p. 4114, states the rule as follows:

''The object of the rule ceases and the attorney is no longer bound by his obligation of secrecy when his client or his representatives charge him, either directly or indirectly, with fraud or other improper or unprofessional conduct. Under such circumstances he may testify as to the facts.''

The rule is supported by the authorities: *Hunt* v. *Blackburn,* 128 U. S. 464 (9 Sup. Ct. 125, 32 L. Ed. 488) ; *State* v. *Madigan,* 66 Minn. 10 (68 N. W. 179) ; *Heinemann Dry Goods Co.* v. *Schiff,* 167 Ark. 422 (268 S. W. 596) ; *Doll* v. *Loesel,* 288 Pa. 527 (136

Atl. 796); *Dewberry* v. *Bank of Standing Rock*, 227 Ala. 484 (150 South. 463); *Farnsworth* v. *Sanford* (C. C. A.), 115 Fed. (2d) 375.

The plaintiffs waived the privilege when they charged their former attorney with incompetency and unpreparedness, and his affidavit was, therefore, admissible under the circumstances to refute the charge. However, even if we totally disregard the affidavit, plaintiffs are not entitled to a new trial on the sole ground that their trial counsel was incompetent to try the case.

The order of the trial court denying a rehearing is affirmed, with costs to defendants.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.