*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAYMOND GUZALL III, an individual; and
RAYMOND GUZALL III, PC, a Michigan
professional corporation,

        Plaintiffs-Appellants,

v

DAVID WARREN, an individual; JOELSON
ROSENBERG, PLC, a Michigan professional
corporation; BARRY A SEIFMAN, an individual;
and BARRY A SEIFMAN, PC, a Michigan
professional corporation,

        Defendants-Appellees.

UNPUBLISHED
August 8, 2019

No. 344507, 345190
Wayne Circuit Court
LC No. 18-000343-CB

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals,[1] plaintiffs Raymond Guzall III and Raymond Guzall III, PC (together, "Guzall")[2] appeal by right two orders of the trial court. In Docket No. 344507, Guzall appeals the trial court's opinion and order granting defendants' motions for summary disposition and imposing sanctions for the filing of a frivolous pleading. In Docket No. 345190, Guzall appeals the trial court's order granting defendants' motions for attorney fees and costs based on its earlier imposition of sanctions. We affirm in both docket numbers.

---

[1] See *Guzall v Warren*, unpublished order of the Court of Appeals, entered September 11, 2018 (Docket Nos. 344507; 345190) (consolidating appeals).

[2] The claims of plaintiff Raymond Guzall III are the same as those of his law firm, plaintiff Raymond Guzall III, PC; we will therefore use "Guzall" both to refer to Guzall, the individual, and, where applicable, the claims or filings of both plaintiffs.

# I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a dispute over attorney fees in earlier litigation that spawned two Court of Appeals opinions and one denial of leave to appeal by our Supreme Court. See *Harris v Greektown Superholdings, Inc*, unpublished opinion of the Court of Appeals, issued August 20, 2015 (Docket No. 322088) ("*Harris I*"); *Harris v Greektown Superholdings, Inc*, unpublished opinion of the Court of Appeals, decided October 31, 2017 (Docket No. 331652), lv den 503 Mich 871 (2018) ("*Harris II*").[3] The majority of the relevant history of that litigation is set forth in our two previous opinions, including that:

> In March 2012, [Plaintiff Diane] Harris, assisted by attorney Raymond Guzall III, filed a lawsuit [in Wayne Circuit Court] against Greektown Casino, LLC, Greektown Superholdings, Inc., and Carolyn Simancik (collectively "Greektown Casino"), asserting claims of racial discrimination, hostile work environment, age discrimination, retaliation, and intentional infliction of emotional distress. In November 2013, a jury returned a verdict in favor of Harris for $600,066. Thereafter, Harris filed a motion requesting entry of judgment and an award of attorney fees and costs.
>
> After the jury returned its verdict but before the trial court entered judgment or awarded attorney fees or costs, appellees, Barry A. Seifman and Barry A. Seifman, P.C., formerly known as Seifman & Guzall, P.C., filed a motion to intervene in Harris's case, asserting a right to any attorney fees awarded. According to appellees, in 2006, Guzall and appellees executed a stockholder agreement expressly providing that in the event Guzall ended his employment with Seifman & Guzall, P.C., all client files would remain the property of the firm. In February 2012, Guzall tendered notice that he was leaving the firm. Appellees asserted that when Guzall left, he took several client files and court documents, including the file regarding Harris's case, in violation of the 2006 stockholder agreement.
>
> Shortly after Guzall left the firm, appellees initiated litigation against him in the Oakland Circuit Court. In March 2012, the Oakland Circuit Court issued a stipulated order stating, "Any attorney fees and or cost reimbursements . . . paid to Plaintiffs or Defendants, whether directly or indirectly, from or on behalf of any of the following clients, shall be deposited into an interest bearing escrow account maintained by the Court." Harris was not listed among the "following clients" covered by the Oakland Circuit Court's March 2012 order. According to appellees, Harris was not listed because Guzall improperly concealed his relationship with Harris. Therefore, appellees argued, intervention in Harris's case was necessary to protect their interest in any attorney fees awarded.

---

[3] We will sometimes refer to the totality of the underlying litigation as *Harris* or the *Harris* litigation.

Following a hearing, the trial court granted appellees' motion to intervene and ordered that any attorney fees awarded would be held in escrow with the Wayne Circuit Court. In January 2014, appellees requested that the trial court refer the issue of entitlement to attorney fees to the Oakland Circuit Court, where the other disputes between Guzall and appellees were pending. The trial court granted appellees' motion and referred the attorney fee dispute to the Oakland Circuit Court. Thereafter, the Court entered judgment on Harris's jury verdict, awarded $50,000 in attorney fees, and dismissed the case with prejudice. [*Harris I*, unpub op at 1.]

As discussed later in this opinion, Guzall was not a party to the appeal in *Harris I*, which was brought by Diane Harris (with Guzall representing her) and challenged the trial court's decision allow Barry A Seifman and Barry A Seifman, P.C. (collectively "Seifman") to intervene in the case to claim an interest in the attorney fee award. *Id*. at 2. *Harris I* was ultimately dismissed after this Court determined that it lacked jurisdiction over Harris's appeal and that Harris lacked standing to appeal, because Harris was not an aggrieved party with respect to the award of attorney fees; this Court made it clear that "Guzall, rather than Harris, was the aggrieved party with standing to appeal in this matter." *Id*. at 3. This Court noted that an attorney who had suffered a concrete and particularized injury and who had a "pecuniary interest in any order affecting attorney fees" would have appellate standing to challenge that order even if he was not a party to the proceedings in the lower court that engendered the order. *Id*. Guzall did not file a claim of appeal, as an aggrieved party, from the trial court's order allowing Seifman to intervene and ordering that any attorney fees be placed in escrow.[4]

The trial court "referred"[5] the attorney fee dispute to Oakland Circuit Court, where litigation was in progress between Guzall and Seifman concerning the dissolution of their law firm. Although the Oakland Circuit litigation was ultimately resolved by case evaluation, the

---

[4] Although this Court has not been provided with the entire lower court record of the *Harris* litigation, it appears from the context of this Court's statements in *Harris I* that Guzall could have claimed an appeal by right from the trial court's order as a postjudgment order awarding attorney fees, see MCR 7.203(A)(1); MCR 7.202(6)(a)(iv); failing that, he could have sought leave to appeal, see MCR 7.205.

[5] On February 14, 2014, the trial court signed an order prepared by Seifman that stated in part as follows: "It is further Ordered that the disputes between Raymond Guzall III and the Third Party Plaintiffs, as the same relates to the attorney fees in this case, are hereby REFERRED to the already pending Oakland County Circuit Court litigation . . . for resolution by said Oakland County Circuit Court." It is unclear to this Court whether this order had the effect of officially transferring the parties' dispute for consolidation with the Oakland Circuit Court litigation, or whether the trial court was effectively merely declining to resolve the attorney fee dispute and advising the parties to seek resolution of that issue in the context of their dispute in Oakland County. It matters not, however, because the attorney fee dispute was in any event ultimately resolved in the trial court (in Wayne County).

Oakland Circuit Court declined to decide the dispute over the funds held in escrow in Wayne County.

After the resolution of the Oakland Circuit Court case, the parties returned to the trial court to address the release of the funds that had been escrowed in Wayne County. At some point, defendants David Warren and Joelson Rosenberg, PLC (together, "Warren") began to represent Seifman in this dispute; Warren filed, on behalf of Seifman, a lien on any attorney fees arising from the *Harris* litigation. Guzall objected to the lien and moved the trial court to release the funds held in escrow, arguing repeatedly that this Court's statements, in *Harris I*, that the trial court had erred by granting Seifman's motion to intervene, were binding on the trial court and required the dismissal of Seifman's claim of entitlement to a portion of the attorney fees held in escrow.

At the hearing on Guzall's motion to release the escrowed funds, Guzall again argued that this Court's statements in *Harris I* required the release of the funds and that any other claims Seifman might have against him were resolved through case evaluation in Oakland Circuit Court. During this hearing, the trial court chastised Guzall several times for shaking his head, laughing, and chuckling, as well as "rudeness," "rolling eyes" and "disrespect." The trial court denied Guzall's motion to release the funds held in escrow, and ordered that an evidentiary hearing be held on the issue of attorney fees.

At the evidentiary hearing, Guzall argued that Harris had a retainer agreement with him, not with the former law firm of Seifman and Guzall, P.C., and presented testimony from Harris to that effect. Guzall then sought to present his own testimony in narrative form and to present "probably about 15 to 20 exhibits." Guzall asserted that he would testify on his own "just as an in pro per [person] could without a lawyer." The trial court denied his request to present his testimony in that fashion, telling Guzall that he could testify, but that he would have to testify in a question-and-answer format while represented by counsel. When the trial court asked if Guzall wished to adjourn the hearing in order to obtain representation and present his testimony in this manner, Guzall stated, essentially, that he would prefer that the trial court make a ruling regarding attorney fees, so that he could appeal that ruling and, on appeal, assert that he was denied his right to testify. The trial court declined to allow Guzall to "create yet another issue for purposes of appeal" and adjourned the hearing to allow Guzall to obtain representation.

After the hearing, Guzall moved to disqualify the trial court judge, as discussed in *Harris II*:

> Following two days of an evidentiary hearing on the issue regarding the distribution of attorney fees to Seifman, the hearing was adjourned, with a third day of proofs being scheduled for February 2, 2016. Guzall then filed a motion to disqualify the trial judge, and a hearing on the motion was scheduled for February 19, 2016, i.e., after the date scheduled for the continuation of the evidentiary hearing, despite Guzall's various efforts to have the motion for disqualification be heard and decided prior to continuation of the evidentiary hearing. In what can only be characterized as a contemptuous act of defiance, Guzall refused to continue participating in the evidentiary hearing absent a ruling

-4-

on the disqualification motion, issuing the following written notice or ultimatum to the trial court and all other parties:

> Third Party Defendant Diane Harris and her attorney, Raymond Guzall III, provides [sic] this notice to the court and all other parties, that Third Party Defendant Diane Harris and her attorney, Raymond Guzall III, will not appear at any hearing scheduled for the continuation of the evidentiary hearing, until after the final determination upon ... [the] motion to recuse [the trial judge] . . . has been entered by the court, or upon an appeal to the chief judge of the court, if necessary.

> Guzall did not appear at the continued evidentiary hearing on February 2, 2016, resulting in the trial court's determination that Guzall was in contempt of court, given that he was aware of the scheduled hearing and that his failure to appear was willful and deliberate. As punishment for the contempt, the trial court struck all of Guzall's pleadings, motions, and documents related to Seifman's claim, defaulted Guzall, and ordered the release of escrowed attorney fees to Seifman. [*Harris II*, unpub op at 1-2.]

In his appeal of the trial court's contempt order, Guzall raised "issues regarding the law of the case doctrine, res judicata, as connected to an earlier Oakland County case between Guzall and Seifman, attorney-client privilege, Guzall's ability to represent himself and provide narrative testimony, the substance of Seifman's claim, and a host of other matters." *Id*. at 3. This Court found it unnecessary to reach the merits of those claims, however, because we affirmed the trial court's holding of contempt and the imposition of the sanctions of striking his pleadings, entering a default against him, and releasing the escrowed funds. *Id*. at 4. Our Supreme Court denied Guzall's application for leave to appeal our decision in *Harris II*. See *Harris v Greektown Superholdings, Inc*, 503 Mich 871; 917 NW2d 632 (2018).

While Guzall's application for leave to appeal this Court's decision in *Harris II* was pending in the Supreme Court, Guzall filed this action. Guzall's complaint accused all defendants of (1) tortious interference with contract, (2) tortious interference with business relationship or expectancy, (3) statutory conversion, (4) unjust enrichment, (5) breach of contract, (6) conspiracy, and (7) intentional infliction of emotional distress. In response, Seifman and Warren each filed a motion for summary disposition under MCR 2.116(C)(7), (8) and (10), arguing that Guzall's claims were barred by collateral estoppel, that this suit was an impermissible collateral attack on the trial court's contempt order, that Guzall's own wrongful conduct barred his attempts at recovery, and that Guzall had failed to state a claim on which relief could be granted. Defendants additionally requested that the trial court sanction Guzall for filing a frivolous pleading. Dispensing with oral argument, the trial court agreed with defendants that summary disposition was warranted, finding Guzall's claims to be barred by collateral estoppel and the collateral attack doctrine, as well as legally deficient.[6] The trial court also held

---

[6] The trial court declined to rely on the "wrongful conduct rule" as a ground for granting summary disposition.

that Guzall's complaint was clearly frivolous and awarded sanctions under MCR 2.114[7] and MCL 600.2591. The trial court directed defendants to file new motions for sanctions along with documentation of their attorney fees and an analysis of the reasonableness of those fees.

Defendants filed such motions. The trial court held a hearing on defendants' motions on July 20, 2018. The trial court made findings concerning the reasonableness of the requested attorney fees under *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016). Following the hearing, the trial court awarded $16,380.73 to Warren and $4,446.80 to Seifman.

These appeals followed.

## II. DOCKET NO. 344507

In Docket No. 344507, Guzall filed an appellate brief presenting 31 questions for this Court's consideration. We find it unnecessary to address each of these questions individually; not only are many of them duplicative, unnecessarily granular, or variations of the same question, but the majority of them fail to address the actual basis of the trial court's order in this case. In essence, Guzall argues that the trial court erred by holding that his claims were barred by collateral estoppel, were an impermissible collateral attack, and were legally deficient. We agree with the trial court that Guzall's claims were barred by collateral estoppel and constituted an impermissible collateral attack on a previous trial court's contempt order and that summary disposition under MCR 2.116(C)(7) was appropriate; we therefore need not address whether each of Guzall's claims were legally deficient under MCR 2.116(C)(8). We also reject Guzall's contention that the trial court erred by imposing sanctions for the filing of a frivolous pleading.

### A. SUMMARY DISPOSITION UNDER MCR 2.116(C)(7)

Guzall argues that the trial court erred by deeming his suit to be an impermissible collateral attack on the trial court's order (in the *Harris* litigation) holding him in contempt, entering a default against him, striking his pleadings and court filings, and releasing the escrowed funds. We disagree. We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(7). *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001). MCR 2.116(C)(7) provides that summary disposition is appropriate if a claim is barred by a prior proceeding or judgment.

### 1. COLLATERAL ATTACK

"It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding." *Worker's Compensation Agency Director v MacDonald's Industrial Prods, Inc (On Reconsideration)*, 305

---

[7] MCR 2.114 was repealed on September 1, 2018, but was in effect at the times relevant to this case. The language governing sanctions previously found in MCR 2.114(D) through (F) is now found in MCR 1.109(E).

Mich App 460, 474; 853 NW2d 467 (2014). Such a "collateral attack" on the previous decision is generally impermissible; rather, a party aggrieved by that decision has resort to the appellate process. See *id*. at 475. Only decisions that are void for lack of subject matter or personal jurisdiction may be collaterally attacked. *Id*.

It is clear that Guzall seeks in this action "another bite at the apple" concerning his entitlement to the attorney fees at issue in the *Harris* litigation. Although Guzall's complaint seeks to frame the issues using the nomenclature of various intentional torts and contractual breaches allegedly committed against him by defendants, his claims in substance seek to relitigate the same issues that were presented and decided in *Harris*. Guzall's complaint alleges, for example, that the trial court in *Harris* improperly allowed Seifman to intervene, that the trial court improperly failed to release the escrowed funds to Guzall because Seifman had no claim to those fees or lacked standing to pursue them, and that defendants' lien was invalid, and essentially raises every issue that he raised or attempted to raise in *Harris*. The complaint is replete with references to the release of the escrowed funds and alleged errors made by the trial court in *Harris*, and, with respect to the breach of contract claim against Seifman, refers to issues that were the subject of the Oakland County litigation between Guzall and Seifman that was resolved by case evaluation. Although Guzall's complaint attempts to recast many of defendants' actions as intentional torts by characterizing them as wrongful, fraudulent, or retaliatory, it is clear that Guzall was essentially asking the trial court to act as though he was never held in contempt and that *Harris* was never resolved. We conclude that Guzall's complaint was a collateral attack on the trial court's order in *Harris* (and possibly to some extent the orders of the Oakland Circuit Court), and thus was only permissible if the order in *Harris* was void for lack of personal or subject-matter jurisdiction.

Guzall now argues on appeal that the trial court in *Harris* lacked personal jurisdiction over him. He did not raise that argument in the trial court; in fact, he sought to avail himself of the trial court's jurisdiction in *Harris* and have it order that he was entitled to the attorney fees that were held in escrow. Moreover, by the time of the trial court's contempt order, Guzall was clearly acting as a party for the purpose of litigating his entitlement to the escrowed funds. See *Harris II*, unpub op at 1 (referring to Guzall as a "third-party defendant"). In fact, a large part of Guzall's decision to seek to disqualify the trial judge in *Harris* appears to have been based on the judge's alleged failure to allow him to "represent himself" in the proceedings over the validity of the lien and entitlement to attorney fees. We conclude that Guzall has waived any challenge to the *Harris* court's exercise of personal jurisdiction over him. See MCR 2.111(F).

Moreover, the trial court in *Harris* in any event had the authority to hold Guzall in contempt either as a party *or* as an attorney appearing before it. See MCL 600.1701(c), (g); see also *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). And it was the trial court's finding of contempt in *Harris* that led to the imposition of sanctions resulting in the striking of his pleadings and the release of the escrowed funds. In other words, even assuming an error of personal jurisdiction that might, absent Guzall's contemptuous conduct, have rendered the trial court's ultimate decision regarding the escrowed funds void and subject to collateral attack, there was no jurisdictional issue with the court's contempt order. We conclude that the trial court's order was not subject to collateral attack for want of personal jurisdiction. *MacDonald's Industrial Prods, Inc (On Reconsideration)*, 305 Mich App at 474-475.

Although Guzall also asserts, without support from caselaw, that the trial court in *Harris* lacked subject matter jurisdiction, the court possessed the jurisdiction to decide issues such as attorney fee disputes, including the validity of defendants' lien. "Subject-matter jurisdiction refers to a court's power to act and authority to hear and determine a case." *Forest Hills Co-operative v Ann Arbor*, 305 Mich App 572, 617; 854 NW2d 172 (2014). Michigan's circuit courts are courts of general jurisdiction. *Okrie v Michigan*, 306 Mich App 445, 467; 857 NW2d 254 (2014). "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies . . . ." MCL 600.605. A circuit court's jurisdiction includes the jurisdiction to decide the validity of attorney charging liens. *Souden v Souden*, 303 Mich App 406, 412; 844 NW2d 151 (2013). And although Guzall argues that the trial court in *Harris* "admitted" that it lacked jurisdiction over the disputed fees when it referred the matter to the Oakland Circuit Court, the court's February 14, 2014 order makes no reference to subject matter jurisdiction. Moreover, that referral does not alter the fact that the *Harris* court had the legal authority to render judgment over the class of cases that included the dispute over the escrowed funds. See *In re Complaint of Knox*, 255 Mich App 454, 457; 660 NW2d 777 (2003) ("Subject-matter jurisdiction pertains to the court's abstract power over a class of cases, not to whether the facts of a particular case present a claim subject to the court's authority."). We conclude that the trial court's order in *Harris* was not void for lack of subject-matter jurisdiction.

Accordingly, the trial court did not err by granting summary disposition in favor of defendants on the ground that the 2018 action represented an impermissible collateral attack on a prior judgment. MCR 2.116(C)(7).[8]

## 2. COLLATERAL ESTOPPEL

Similarly, we agree with the trial court that Guzall's claims are barred by collateral estoppel. Collateral estoppel is an equitable doctrine that precludes relitigation of issues that

---

[8] Although Warren was not a party to the *Harris* case, the claims that Guzall asserted against Warren in the 2018 action arose out of Warren's representation of Seifman in *Harris*—in fact, neither Guzall's complaint nor his brief on appeal explain what specific conduct of Warren, apart from his representation of Seifman in *Harris*, provides the basis for Guzall's claims against him. An attorney's client is generally responsible for the actions of his attorney taken within the scope of the attorney's authority. See *Everett v Everett*, 319 Mich 475, 482-483; 29 NW2d 919 (1947). The addition of Warren as a party does not alter the gravamen of Guzall's complaint as an impermissible collateral attack, as Guzall merely seeks to litigate the same issues he had the opportunity to litigate in the previous lawsuit (the validity of the lien, his entitlement to the escrowed funds, et cetera); he merely does so in the context of having added Warren as a defendant. In any event, Seifman is responsible for Warren's actions taken within the scope of his authority. See *Monat v State Farm Ins Co*, 469 Mich 679, 691-692; 677 NW2d 843 (2004) (noting that the mutuality requirement need not be strictly followed when collateral estoppel is "asserted defensively" and that "a party is entitled to his day in court on a particular issue, and is not entitled to his day in court against a particular adversary."); see also *Everett*, 319 Mich at 482-483.

were litigated in a prior proceeding. *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Generally, collateral estoppel applies if (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there is mutuality of estoppel. *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004).

Collateral estoppel applies to issues resolved by default judgment, but only "as to those matters essential to support the judgment." *Rohe v Scientific Corp v Nat'l Bank of Detroit*, 133 Mich App 462, 467; 350 NW2d 280 (1984). "[A] default judgment is equivalent to an admission by the defaulting party to all of the matters well pleaded." *Sahn v Brisson*, 43 Mich App 666, 670-671; 204 NW2d 692 (1972).

The trial court in *Harris* found Guzall in contempt and, as a sanction, struck his pleadings and court filings, entered a default against him, and ordered the release of the escrowed funds. This Court already determined in *Harris II* that these sanctions were appropriate for Guzall's contempt.[9] See *Harris II*, unpub op at 2. The issues that were resolved by the default included Guzall's and Seifman's interests in the escrowed funds and the validity of defendants' lien; these issues were therefore "essential to support the judgment." *Rohe*, 133 Mich App at 467. Moreover, until he was found to be in contempt, Guzall was given the full and fair opportunity to litigate these issues; that opportunity was only cut short by his own contemptuous behavior, not by any action of the trial court. Finally, as discussed earlier, the 2018 action was brought by one party to the dispute over the escrowed funds (Guzall) against the other parties to that dispute (Seifman); further, the addition of Warren as a defendant does not defeat the mutuality requirement when Warren only acted as Seifman's attorney. See *Monat v State Farm Ins Co*, 469 Mich 679, 691-692; 677 NW2d 843 (2004); see also *Everett v Everett*, 319 Mich 475, 482-483; 29 NW2d 919 (1947).

For these reasons, the trial court did not err by granting summary disposition in favor of defendants under MCR 2.116(C)(7) on the ground that the 2018 action was barred by collateral estoppel.[10]

## B. AWARD OF SANCTIONS

Guzall also argues that the trial court erred by awarding sanctions to defendants for his filing of a frivolous complaint. We disagree. We review for clear error a trial court's decision to

---

[9] The trial court held Guzall in criminal, rather than civil, contempt. While civil contempt is coercive and seeks to compel a party to comply with a trial court's orders, criminal contempt is punitive. See *In re Moroun*, 295 Mich App 312, 332; 814 NW2d 319 (2012). In *Harris II*, this Court held that "Guzall's behavior constituted criminal contempt" and that the trial court's sanctions were "punishment for a completed act of disobedience." *Harris II*, unpub op at 3.

[10] Because we affirm the trial court with respect to its grant of summary disposition under MCR 2.116(C)(7), we do not address the alternate grounds for summary disposition it cited under MCR 2.116(C)(8).

impose sanctions under MCR 2.114. *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." Sanctions may be awarded under [former] MCR 2.114(D) for the filing of frivolous actions or defenses. MCL 600.2591(3)(a) provides that a claim is frivolous if:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

The trial court held both that Guzall's primary purpose in initiating the 2018 action was to harass Seifman and that his complaint was devoid of arguable legal merit. We agree. As discussed earlier, Guzall's complaint sought to re-litigate issues that he had raised in prior litigation—litigation that was ended by his own contemptuous actions toward the trial court. In fact, at the time he filed the 2018 action, his application to appeal the trial court's contempt order in *Harris* was still pending in the Michigan Supreme Court. Guzall knew, or should have known, that his attempt to have a different trial court revisit and overrule many of the previous trial court's determinations, while seeking to pretend that the previous trial court's finding of contempt had never happened, was meritless. We note also that Guzall declined, after this Court's decision in *Harris I*, to file an appeal concerning Seifman's intervention with himself listed as the aggrieved party, which would have provided him with a forum to address many of the issues he raised in his complaint and raises on appeal. And Guzall's argument that he could not have pursued the issues in his complaint during the previous litigation because he had not yet been "damaged" is nonsensical because the "damage" was the loss of the escrowed funds, i.e., the *precise* issue the previous proceeding was intended to (and did) resolve. We find no clear error in the trial court's determination that Guzall's complaint in the 2018 action was frivolous and worthy of sanctions. *Guerrero v Smith*, 280 Mich App at 677.

Accordingly, we affirm in Docket No. 344507. As the prevailing party, defendants may tax costs. MCR 7.219(A).

### III. DOCKET NO. 345190

In Docket No. 345190, Guzall argues that the amount of attorney fees awarded to defendants by the trial court was not reasonable. Once again, we find it unnecessary to individually address each of Guzall's 9 questions presented. Generally speaking, Guzall argues that the trial court incorrectly determined the hourly rate for Seifman's and Warren's awards, failed to sufficiently review the billing records presented, and failed overall to make sufficient findings of fact and to provide sufficient analysis of the relevant factors under *Pirgu*, 499 Mich at 281-282. We disagree in all respects.

We review for an abuse of discretion a trial court's award of attorney fees and costs. See *Pirgu*, 499 Mich at 274. "An abuse of discretion occurs when the trial court's decision is outside

the range of reasonable and principled outcomes." *Id*. We review de novo questions of statutory interpretation. See *id*.

Our Supreme Court has recently discussed the procedure a trial court must follow in awarding attorney fees. A trial court "must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services." *Id*. at 281. The trial court must then "multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. The trial court must then consider several factors in determining "whether an up or down adjustment is appropriate." *Id*. These factors are:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id*. at 282.]

"In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*.

At the outset, we conclude that all of Guzall's arguments concerning the trial court's alleged failure to adequately conduct a *Pirgu* analysis or to analyze defendants' billing statements in sufficient detail are meritless. The trial court in fact conducted an extensive and detailed analysis, made extensive findings of fact concerning the billing records provided, and analyzed on the record all of the *Pirgu* factors in sufficient detail to allow for appellate review.

Regarding his challenge to the hourly rate awarded, Guzall argues that the trial court did not justify why it awarded an hourly rate to defendants that was higher than the median rate listed in the 2017 State Bar of Michigan Economics of Law Practice Survey. However, the trial court in fact did so, noting that the attorney for Warren, Steven Wolock, was an equity partner and shareholder in his law firm, noting the size of the firm and Wolock's 33 years of practice, and determining that $300 per hour was a reasonable rate for a lawyer of his experience. In making this determination, the trial court specifically determined that the range of fees for similar attorneys in the area was $250 to $300 per hour, but that Wolock's years of experience and his status as an equity partner merited the higher end of the range. We find no abuse of discretion in the trial court's conclusion. *Pirgu*, 499 Mich at 274.

-11-

With regard to Seifman's attorney, Edward Lennon, the trial court noted that "the only thing that is of any significant difference" between Lennon and Wolock was the size of their respective law firms. The trial court concluded that the difference was not significant enough to warrant awarding a different rate to an attorney with 29 years' experience, and again awarded $300 per hour. We also find no abuse of discretion in the trial court's conclusion. *Id*.

Regarding Wolock's rate, Guzall raises the additional challenge that the trial court was not permitted to award an hourly rate higher than the $240 per hour rate that Wolock had actually charged his client. Guzall provides no support for his contention that a rate higher than the actual rate charged is per se unreasonable, and our Supreme Court has made it clear that the "reasonable fee" awarded "may differ from the actual fee charged." *Smith v Khouri*, 481 Mich 519, 528; 751 NW2d 472 (2008); see also *Cleary v Turning Point*, 203 Mich App 208, 212; 512 NW2d 9 (1993). Guzall argues that the trial court's award at a higher rate than Wolock actually charged represents a "windfall," but this is merely another way of asserting that a fee is unreasonable, and we do not find the trial court's award to be unreasonable. See *id*. at 528 ("This rule, however, is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls. Rather, it only permits an award of a reasonable fee, i.e., a fee similar to that customarily charged in the locality for similar legal services . . . .").

Guzall also raises numerous challenges to specific entries in defendants' billing statements. Guzall raised these challenges before the trial court and, despite his argument to the contrary, it is clear that the trial court carefully considered them. Although Guzall faults the trial court for an off-hand comment that it did not intend to "flyspeck every single entry" in the billing records, the trial court also stated that it had reviewed the entirety of both defendants' attorneys billing records and had reviewed each of Guzall's objections. The trial court struck several entries as related to issues that were not relevant, such as research on an issue that was stricken by the trial court on procedural grounds. The trial court also struck billing entries related to contact with its clerk, struck certain entries related to travel time that the court found to be unreasonable, and reduced the time billed for reviewing other attorneys' work product. On the whole, the trial court conducted a detailed, thorough analysis of the billing records provided, and did not abuse its discretion in determining the number of hours awarded. *Pirgu*, 499 Mich at 274.

With regard to the remaining *Pirgu* factors, Guzall does not specifically contest the trial court's analysis of those factors, but only asserts, inaccurately, that the trial court failed to make such findings in sufficient detail. Additionally, we disagree with Guzall's argument that the trial court should have stricken in its entirety Seifman's motion for sanctions because Seifman had failed to comply with the court's order requiring him to provide an analysis of the *Pirgu* factors. The trial court found Seifman's motion for sanctions adequate despite its lack of explicit discussion of these factors. Seifman's motion did include an affidavit from Lennon that asserted information relevant to several of the *Pirgu* factors, such as "the experience, reputation, and ability of the lawyer or lawyers performing the services," "the expenses incurred," "the nature and length of the professional relationship with the client," and "whether the fee is fixed or contingent." *Pirgu*, 499 Mich at 282. We conclude that the trial court did not abuse its discretion by allowing Seifman to fill in the gaps at oral argument or by declining to strike

Seifman's motion as noncompliant, or by awarding reasonable attorney fees to defendants as sanctions for Guzall's frivolous filing. *Pirgu*, 499 Mich at 274.

Accordingly, we affirm in Docket No. 345190. As the prevailing party, defendants may tax costs. MCR 7.219(A).

IV. CONCLUSION

We affirm in both docket numbers, and defendants may tax costs. Additionally, defendants have asserted in their briefs that Guzall's appeals in both docket numbers are frivolous and vexatious. See MCR 7.216(C)(1)(a). MCR 7.211(C)(8) provides:

> Vexatious Proceedings. A party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule. A party may file a motion for damages or other disciplinary action under MCR 7.216(C) at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious.

Therefore, defendants may file, within 21 days of the date of this opinion, a motion for damages or other disciplinary action under MCR 7.216(C) that meets the requirements of MCR 7.211.


/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

-13-